SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* COMPTON.

Opinion delivered October 27, 1919.

1. LIFE INSURANCE—FRATERNAL ORDER—CONSTITUTION OF, AS PART OF CONTRACT.—Compliance with the essential terms of the constitution and by-laws of a fraternal association is a necessary prerequisite to a valid contract of insurance with it.

2. SAME—SAME—SAME.—The constitution of a fraternal order is a part of the contract insuring its members, and, if not inconsistent with the terms of the certificate, will be binding as part of the contract.

3. SAME — SAME — HAZARDOUS ENTERPRISE — AERONAUTICS—RULE OF THE ORDER.—Deceased, who had held a certificate in appellant fraternal insurance order, was drafted into the Government, assigned to the aviation section of the army, and was killed while flying. In an action by the beneficiary to recover on the certificate, the order pleaded in bar of recovery an amendment to its by-laws, prohibiting from membership those engaged in aviation, unless an additional sum was paid by way of premium. Deceased kept up his dues but did not pay the additional amount. *Held,* the amendment to the constitution of the order applied to

those only engaged in aviation as a private enterprise, and not to persons in the service of the Government in the army or navy.

4.   SAME—SAME—SAME.—Under the facts set out in the preceding syllabus, *held,* that a member of the order, in good standing at the time the amendment to the constitution was adopted, did not forfeit his membership by joining the aviation branch of the army, or by failing to pay the additional assessment fixed by the amendment.

Appeal from Miller Circuit Court; *George R. Haynie,* Judge; affirmed.

*Lewis Rhoton, Thomas E. Helm* and *Gardner K. Oliphint,* for appellant.

1.   The assured having engaged in aviation, as an aviator, and failed to notify the clerk of the camp within thirty days of his changed occupation and failed to pay the assessments required by the Constitution and by-laws, plaintiff can not recover as the certificate became void. *Miller* v. *Ill. Bankers Life Assn.,* ms. op., April 28, 1919; 208 S. W. 587; 52 Ark. 201-206; 1 Bacon on Ben. Soc.; § 81; 80 Ark. 419; 81 *Id.* 514; 105 *Id.* 140-143; 1 Bacon, Ben. Soc., § 157; 19 R. C. L., p. 1198-9, § 17; Vance on Ins. 193; 122 Ark. 480; 209 S. W. 379; 113 Ark. 400; 241 U. S. 574.

2.   It was the duty of the assured to give notice while he was engaged in a prohibited occupation. 167 S. W. 587; 188 *Id.* 941. This case directly in point.

3.   The application, rules, by-laws and constitution are part of the contract, and the member must comply with them and give notice as required and pay the additional premium. 19 R. C. L., pp. 1209-10, § 25; 87 S. W. 530.

*J. M. Carter,* for appellee.

The certificate was not forfeited by assured's enlistment in the army of the United States and is not covered by section 42 or 43 of constitution of the order. The service of an enlistment man under military order of the United States is not a ''business'' nor ''employment'' within the meaning of the constitution of the or-

der. Under the evidence appellee has made a clear case of liability by the camp and the judgment should be affirmed.

STATEMENT OF FACTS.

W. G. Compton sued the Sovereign Camp Woodmen of the World to recover as beneficiary on a death certificate for $1,000 upon the life of his son, Jas. H. Compton.

The insurance company denied liability under the terms of the benefit certificate. The case was tried upon an agreed statement of facts substantially as follows:

The insured, Jas. H. Compton, on the 1st day of April, 1917, was between the ages of twenty-one and thirty years and was a citizen of Miller County, Arkansas. He was in good health and a number in good standing of the Sovereign Camp Woodmen of the World. He had a beneficiary certificate in that company for $1,000, in which his father was named as beneficiary. On the 6th day of April, 1917, a resolution of the Congress of the United States was adopted declaring that a state of war existed between the United States and Germany. Jas. H. Compton was subject to the terms of the Selective Draft Act and on the 1st day of December, 1917, was inducted into the service of the United States as an enlisted man. He was assigned to that branch of the army commonly known as the aviation branch, and was stationed at Ellington Field, Houston, Texas. While undergoing training there as an aviator he was killed, either by falling from his aeroplane or by the aeroplane falling while he was in it.

Section 42 of the constitution, laws and by-laws of the Sovereign Camp Woodmen of the World, as amended and adopted at its twelfth biennial session at Atlanta, Georgia, in July, 1917, provides:

"(a) Persons engaged in the following classes of business or employment shall not be admitted:

"Those employed in any department of ammunition factories where explosive compounds are made or handled, balloonists, aviators, aeronauts, aeroplanists, plow

grounders, sandstone cutters, grindstone turners, professional gamblers, saloon-keepers, bartenders or those engaged in the retailing of intoxicating liquors as a beverage; automobile drivers and mechanics in races, automobile speed testers, motorcycle riders in races, high divers into netting or into water, professional contortionists, marine divers, submarine divers, fireworks makers, horse jockeys, and oil or gas well shooters; also persons employed in the making, compounding, distilling, rectifying or brew of malt, spirituous, vinous or intoxicating liquors, or in the distributing or delivery of the same.

"(b)   The beneficiary certificate of a member who shall engage in any prohibited occupation shall thereby become null and void unless such member shall within thirty days after engaging in such prohibited occupation notify the clerk of his camp in writing, of such change of occupation, and thereafter, while so engaged, pay an additional sum of fifty cents on each monthly installment of assessment for each $1,000 of his beneficiary certificate, or six dollars additional per annum on each $1,000 of his beneficiary certificate.

"(c)   Provided, that if a member becomes or is employed as a saloon keeper, bartender, or is engaged in the retailing of intoxicating liquors as a beverage, legally or illicitly, and the possession of a United States revenue license may be taken as evidence thereof; or in the making, compounding, distilling, rectifying or brewing of malt, spirituous, vinous or intoxicating liquors, or in the distribution or delivery of the same, the camp of which he is a member may expel him therefor under the provisions of Division 'E' of the prescribed by-laws, in which event his beneficiary certificate shall be null and void."

Section 43 amended at the same time, is as follows:

"(a)   Persons engaged in the following occupations, towit:

"Structural iron workers, circus riders and trapeze performers, conductors and brakemen on railway freight trains, locomotive engineers and firemen, switchmen,

hostlers and other similar railway or steamship employees, excepting agents, office men and those engaged in employment not more hazardous; those employed · in mines not otherwise prohibited; sailors on seas, electrical linemen, employees in electrical current generating plants and enlisted men in the army and navy during the war, may be admitted to membership if accepted by the sovereign physician, but their certificates shall not exceed $2,000 each and their rates of assessment shall be $3.60 per annum for each $1,000 of their beneficiary certificate in addition to the regular rate while so engaged in such hazardous occupation.

"(b) If a member engages in any of the occupations or business mentioned in this section, he shall within thirty days notify the clerk of the camp of such change of occupation, and while so engaged in such occupation shall pay on each monthly installment of assessment thirty cents for each $1,000 of his beneficiary certificate in addition to the regular rate. Any such member failing to notify the clerk and make such payments as above provided shall stand suspended, and his beneficiary certificate shall be null and void; provided, that all members, officers and enlisted men now in good standing in the society, enlisted in the army or navy in defense of the United States, shall be exempt from additional premium herein required, and provided further, the Sovereign Executive Council is hereby authorized and empowered to ascertain and put into effect a rate of insurance which it may deem adequate and which shall apply only to members, officers and enlisted men of the army and navy, and to adjust and readjust same from time to time during the continuance of the war in which the United States is engaged. Provided, such rate shall apply only to persons who hereafter join the Woodmen of the World, or to certificates of increase of insurance, or for reinstatement; and provided, further, that this provision shall take effect immediately upon its passage."

The benefit certificates sued on was for the sum of $1,000 and was issued to Jas. H. Compton on the 12th

day of December, 1908. His father, W. G. Compton, was named as the beneficiary in the policy. His regular dues were paid up until the time of his death, but he did not pay or offer to pay the extrahazardous assessment required by section 42 of the constitution and by-laws which is set out above.

The case was tried before the court sitting as a jury and the court found the issues in favor of the plaintiff. Judgment was therefore entered in favor of the plaintiff against the defendant for the sum of $1,000 and interest. The defendant has appealed.

HART, J., (after stating the facts). (1-2) The Sovereign Camp Woodmen of the World is a mutual benefit association and in the certificate sued on it is provided that the constitution and by-laws of the order should be a part of the contract between the order and the member. It is well settled that compliance with the essential terms of the constitution and by-laws of a fraternal association is a necessary prerequisite to a valid contract of insurance with it. In other words, the constitution of a fraternal order becomes a part of the contract insuring its members and if not inconsistent with terms of the certificate will be binding as part of the contract. *Supreme Lodge K. & L. of H.* v. *Johnson,* 81 Ark. 512; *Woodmen of the World* v. *Hall,* 104 Ark. 538; *Supreme Royal Circle* v. *Morrison,* 105 Ark. 140; *Sovereign Camp Woodmen of the World* v. *Anderson,* 133 Ark. 441; and *Baker* v. *Mosaic Templars of America,* 135 Ark. 65.

The principal contention of the defendant is that the insured came within the provisions of section 42 of the constitution as amended at the twelfth biennial session of the order at Atlanta, Georgia, in July, 1917, and that the policy became null and void because the insured did not, within thirty days after entering the aviation branch of the United States army notify the clerk of his camp in writing of his change in occupation and thereafter pay an additional sum of fifty cents monthly. We cannot agree with counsel for the defendant in this contention.

We do not think that section 42, referred to, relates to those in the army and navy of the United States. The section, by its terms, refers to persons engaged in private occupations and the aviators, aeroplanists, etc., mentioned in the section referred to are persons engaged in that business as a private occupation and not those engaged in the aviation branch either of the army or the navy of the United States. No reference whatever is made to the army or navy of the United States in that section. The language is directed solely to persons engaged in private occupations.

This construction is made manifest when we consider it in connection with section 43. When the company decided to deal with the men in the army or navy of the United States, it mentioned them in specific terms and spoke of them as enlisted men in the army or navy in defense of the United States. Hence we think the circuit court was correct in holding that the insured did not come within the provisions of section 42 of the constitution of the order copied in our statement of facts.

(4) It is also contended by counsel for defendant that the benefit certificate is void under section 43 of the constitution as amended at the twelfth biennial session at Atlanta, Georgia, in July, 1917. They refer to that part of section (a) which provides that enlisted men in the army and navy during the war may be admitted to membership if accepted by the society and they pay the additional assessment prescribed by the section. We do not think, however, that section has any reference under the facts in the case at bar. It was intended to prescribe the terms upon which enlisted men in the army and navy might thereafter become members of the order, but it had no reference to members in good standing at the time the amendment to the constitution was adopted in July, 1917. This is shown in section (b).

Section (b) contains the proviso that members, officers and enlisted men now in the army or navy in the defense of the United States shall be ex-

empt from the additional premium required in the section. The evident purpose of this clause was to exempt members in good standing in the society at the time of the adoption of the amendment to the constitution in July, 1917, from its provision. This is further shown by the concluding part of section (b) that it authorizes the Sovereign Executive Council to put into effect a rate of insurance which should apply only to officers and enlisted men of the army and navy. This means those in the army and navy who might thereafter wish to become members of the society. This is made certain by the concluding proviso that such rates shall apply only to persons who hereafter join the society, or to certificates of increase of insurance or for reinstatement. The insured, Jas. H. Compton, was a member of the society in good standing at the time of the adoption of these amendments to the constitution in July, 1917, and his subsequent enlistment in the army of the United States did not have the effect to avoid the policy. The reason is that the notice and additional assessments have no application to members of the society in good standing at the time of the adoption of the amendments to the constitution, although they might thereafter join the army or navy of the United States.

It follows that the judgment will be affirmed.