No. 36,798

BONNIE KNOUSE, *Appellee,* v. EQUITABLE LIFE INSURANCE COMPANY
OF IOWA, *Appellant.*

(181 P. 2d 310)

JAY SULLIVAN, judge. Opinion filed June 7, 1947.

*Phineas M. Henry,* of Des Moines, Iowa, argued the cause, and *Everett E. Steerman* and *Edward H. Rees,* both of Emporia, were with him on the briefs for the appellant.

*Roscoe W. Graves,* of Emporia, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover on a policy of life insurance, and from a judgment in favor of plaintiff the defendant appeals.

The only question presented by the appeal is the force and effect

to be given to an "Additional Provision Relating to Aviation" which was attached to the policy of insurance and is hereafter referred to as the aviation provision. The facts were either admitted by the pleadings or by stipulation of the parties, and for present purposes are stated as follows:

Under date of August 20, 1941, Ralph M. Knouse made written application to the defendant company for insurance on his own life, designating as the primary beneficiary his wife, Bonnie Knouse. Among other questions answered in the application was number 9 which was divided into two parts. Part A stated applicant did not intend to engage in military or naval service. Part B consisted of a printed statement that applicant had not participated in airplane flights or aviation during the past year and did not intend to do so in the future, nor had he ever participated in airplane flights or aviation as a pilot, followed by the following writing: "I fly my own plane occasionally." On a place on the application marked "For Home Office Endorsements Only" appears the following notation: "Approved for issue with Rider 4069." Under date of August 28, 1941, a policy of insurance was issued by the company and consistent with the application for it, a copy of the application being attached to and made part of the policy. We need notice only the aviation provision attached to the policy. Except for its date, the policy number, the name of the insured and the signature of a company officer, the provision is printed. It bears a notation that it is "Form 4069," and so far as now material, reads as follows:

"Death as a result, directly or indirectly, of service, travel or flight in any species of aircraft, except as a passenger on a regularly scheduled passenger flight of a duly licensed common carrier, is a risk not assumed under this Policy; but, if the Insured shall die as a result, directly or indirectly, of such service, travel or flight, the Company will pay to the beneficiary the reserve on this Policy, . . ."

The policy contained no provision or additional provision respecting military or naval service. On April 28, 1944, the insured entered the military service of the United States. On June 7, 1945, he was a fire-control gunner on an army bomber plane operating out of Tinian and while returning from a mission to Osaka the plane's gasoline supply became exhausted, the insured and all the crew bailed out of the plane while it was in the air and the insured was killed by the jump from the plane.

Thereafter the present action was commenced. The petition needs

no mention. The company's answer admitted the execution of the policy, pleaded the facts concerning the death of the insured, as well as the aviation provision of the policy, and alleged that under that provision its liability was limited to the reserve under the policy in the amount of $152.67. The parties have stipulated that that is the correct amount of the reserve.

At the trial of the action no testimony was offered or received, but the trial court, over the defendant's objection that it was incompetent, irrelevant and immaterial, permitted the plaintiff to introduce as evidence a form of an "Additional Provision Relating to Residence, Travel, Occupation and Military, Naval, or Air Service." No error is specified on this ruling. The contents of this document will not be referred to further for there is no showing that it was ever attached to any policy at any time.

Upon the showing made, the trial court took the matter under consideration, and later it rendered a judgment in favor of plaintiff. Defendant's motion for a new trial was denied, and it perfected its appeal to this court, its specification of error and its brief raising the question that the trial court erred in not giving proper force and effect to the aviation provision.

Before taking up appellant's contentions we first notice briefly the reasons for upholding the trial court's judgment as set out by appellee in her brief.

Appellee directs attention to the answers made to questions 9A and 9B heretofore mentioned, and argues that because the company, on the basis of the answers made, attached the aviation provision, and did not attach any provision relating to military service, it did not intend to exclude flying in military service and that the provision attached must be construed as referring to civilian flying only; that taking into consideration both answers made, the policy with the provision as attached, is ambiguous, and being ambiguous, is to be interpreted favorably to the insured, and so construed excludes only civilian airflights and not military airflights. Appellee also contends that the aviation provision should be construed so that it is limited to voluntary flights by the insured and not to flights under military or other compulsion.

Appellant contends that the provision attached is not ambiguous but covered any flight in any species of aircraft except as a passenger on a regularly scheduled passenger flight of a duly licensed common carrier; that the insured was not such a passenger and the

insured having met his death as above stated, the amount recoverable by his beneficiary is limited to the reserve on the policy.

Preliminary to a discussion of these contentions and of the authorities cited in support, as well as others which our research has disclosed, it is well to bear in mind certain fundamental principles and facts applicable to the situation.

It is to be borne in mind that under the express terms of the policy, the policy, with the application therefor, constituted the entire contract between the parties. This provision was consonant with the statute (G. S. 1945 Supp. 40-420) and with our decisions. (*Liberty Life Ins. Co. v. Guthrie,* 148 Kan. 907, 84 P. 2d 891.) Under the statute mentioned a military clause could have been made a part of the policy. There was no such clause in the policy, and as has been noted, there was no additional provision or rider of that nature attached to it.

If the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail. (*Samson v. United States Fidelity & Guaranty Co.,* 131 Kan. 59, 289 Pac. 427; *Tripp v. United States Fire Ins. Co.,* 141 Kan. 897, 44 P. 2d 236; *Sebal v. Columbian Nat. Life Ins. Co.,* 144 Kan. 266, 58 P. 2d 1108.) An insurer prepares its own contracts and it is its duty to make the meaning clear and if it fails to do so, it and not the insured, must suffer. (*Liberty Life Ins. Co. v. Guthrie,* supra.) Courts should not be astute to evade, rather than quick to perceive and diligent to apply the meaning of words manifestly intended by the parties (*Gorman v. Fidelity & Casualty Co. of New York,* 55 F. 2d 4) but where a contract is unambiguous it must be enforced according to its terms (*McKellar v. Brubaker,* 160 Kan. 451, 163 P. 2d 358). Where a contract is not ambiguous, the court may not make another contract for the parties; its function is to enforce the contract as made. (*State Highway Construction Cases,* 161 Kan. 7, 166 P. 2d 728; *Watkins v. Metropolitan Life Ins. Co.,* 156 Kan. 27, 131 P. 2d 722; *Movitz v. New York Life Ins. Co.,* 156 Kan. 285, 133 P. 2d 89; and *Gorman v. Fidelity & Casualty Co. of New York,* supra.)

It may be noted that there have been many cases dealing with the construction and application of provisions of life or accident policies relating to various phases of aviation or airplane flights, as is disclosed in the annotation in 155 A. L. R. 1026 and other annotations noted therein, and reference is made thereto. As those annotations

disclose, there are many types of such provisions, and conclusions reached under one clause are not necessarily decisive of like facts under another. In the review hereafter made we shall confine ourselves to cases cited in the briefs or disclosed by our own research and, generally speaking, not referred to in the above annotations.

In support of the judgment of the trial court, appellee correctly states there have been no Kansas cases on the question under consideration. In support of her contentions, as heretofore outlined, appellee directs our attention to three cases.

The first case we note is *Sovereign Camp W. O. W. v. Compton*, 140 Ark. 313, 215 S. W. 672, decided in 1919. The insured became a member of the W. O. W. organization in 1908 and received a beneficiary certificate. After the declaration of war in April, 1917, he enlisted in the army in December, 1917, and while undergoing training as an aviator he was killed in the fall of a plane while he was in it. In July, 1917, the Sovereign Camp W. O. W. adopted a bylaw, No. 42, that persons engaged in certain classes of business or employment should not be admitted. The classification included "balloonists, aviators, aeronauts, aeroplanists" and others. By another bylaw, No. 43, adopted at the same time, the organization was authorized to put into effect an adequate rate applying to members, officers, enlisted men in the United States army. Such a rate was put in effect but not paid by the insured. In its opinion the supreme court recognized that fraternal orders might amend their bylaws, which amendments became a part of the contract, but with reference to a claim that bylaw 42 precluded recovery it was of the opinion that bylaw 42 did not relate to service in the army or navy; that by its terms it referred to persons engaged in private occupations and not to those in the aviation branch of the army or navy of the United States, and that such construction was manifest when considered in connection with bylaw 43, for it dealt in specific terms with men in the army or navy. It was also held that bylaw 43 had no application to one already a member and was intended to prescribe the terms upon which men in the service might become members of the order. A judgment in favor of the beneficiary was affirmed.

The second case is *Paradies v. Travelers Ins. Co.*, 183 Misc. 887, 52 N. Y. S. 2d 290, decided in 1944. The decision is that of the city court of New York and not of an appellate court. The policy contained a special provision as to aeronautics substantially like the

one now before us. The policy also contained a provision for incontestability except for violation for the conditions of the contract relating to military or naval service in time of war if such service be restricted by endorsement at date of issue, and that it was otherwise free from conditions as to residence, occupation, travel or place of death, except as provided in the special provision as to aeronautics. The insured was killed in a bombing mission over Italy. The beneficiary brought an action and the company relied upon the aeronautics clause as limiting liability to the reserve on the policy. The court in construing the clause said it told the insured that if he traveled by air, it was not liable unless he traveled under circumstances there stated; that it gave insured a choice and put him on guard that if he traveled any other way by air and met his death or if he was killed while flying with a stunt pilot or a sky writer or a private aviator he would not be protected. The court then said:

"This, to my mind, means civilian flying, either business or pleasure, because the very next clause mentions 'except for violation of the conditions of the contract relating to military or naval service . . . if such service shall be restricted by indorsement hereon at date of issue.'" (l. c. 291, 292.)

Saying further that had the insured been killed in a foxhole, on a landing beach or lost at sea, the court was certain the company would pay, it granted plaintiff's motion for judgment. The court cited no authorities in support of its conclusions, nor have we found any later case where the decision has been cited except *Durland v. New York·Life Ins. Co.*, 61 N. Y. S. 2d 700, which is referred to later.

The third case relied on by appellee is *Schifter v. Commercial Travelers Mut. Acc. Ass'n.*, 183 Misc. 74, 50 N. Y. S. 2d 376, (affirmed 269 App. Div. 706, 54 N. Y. S. 2d 408) decided in 1944. The defendant was a membership corporation under New York law. On February 18, 1942, it issued a certificate of membership to plaintiff's son, and provided benefits if the assured lost his life by accidental means. Under its terms the certificate did not cover (b) while assured was in military or naval service, or (d) while he was making or taking any aerial flight except as a passenger under stated conditions. Annexed to the certificate, however, was an endorsement, headed "Membership Covers Military Training" dated April 1, 1941, which provided in substance that in line with the association's policy of coöperating in the country's defense, the association would continue in full the protection described in his

certificate "regardless of those provisions which except from payment any claims arising where he has changed to a hazardous occupation or has entered the armed forces of the Nation in time of war so long as" assured remained in the continental limits of the United States and Canada and no actual warfare took place therein. On January 3, 1943, assured entered military service, was assigned to the air forces and on November 15, 1943, was killed while on a training flight in Texas. In discussing extent of limitation of coverage, the court commented on the air program in force on April 1, 1941, date of the endorsement noted above, and that the association must have been aware then that those who entered the armed services would no longer be free to choose their occupations or to order their daily lives, and that no one could know when he would be ordered into a plane, and if so he could not decline. The court held there was nothing ambiguous about the statements in the provision of April 1, 1941. This opinion contains no citation of any authorities in support nor have we discovered any subsequent case where it has been relied on and followed.

The decisions hereafter reviewed include those principally relied on by the appellant.

In *Hyfer v. Metropolitan Life Ins. Co.*, 318 Mass. 175, 61 N. E. 2d 3, decided in 1945, it appeared that in December, 1940, Irving Hyfer made application for a life insurance policy in which his mother was to be the beneficiary. The policy was later issued. It contained no clause respecting war risks but there was a special provision as to aeronautics substantially like the one now under consideration. At a later date he enlisted in the army and became a radio operator on an official army transport plane which carried no "NC license" but bore an army serial number. The pilot of the plane was licensed both by the army and civilian aircraft authority. On October 1, 1942, while on a scheduled flight in Porto Rico the plane crashed into a hill and Hyfer was killed. In an action by the beneficiary she contended the aeronautical provision should not apply; that since there was no war clause, the aeronautical provision must be interpreted as not precluding payment for death occasioned by airplane flight in the armed services. The court held that such a contract was in direct conflict with the aeronautical provision, and that the absence of a war risk provision did not operate to engraft an implied exception upon the unambiguous aeronautical clause; that the clause related to the risk itself and not to the reason for the

exposure (citing *Green v. Mutual Ben. Life Ins. Co.*, reviewed hereafter) ; that it was fallacious reasoning to say that because the policy failed to exclude liability for war losses in general the scope of the undertaking, which clearly did exclude certain aviation deaths, was, by such failure, to be construed to comprehend all war losses and so to cover war aviation deaths of the excluded kind. The court denied a contention the insured's presence in the plane was not voluntary but by reason of *vis major* and that the exclusion should be limited to risks voluntarily taken by stating that even if the premise be conceded, the conclusion contended for was beyond the bounds of permissible interpretation. The court concluded that *Green v. Mutual Ben. Life Ins. Co.*, infra, was in accord with the result reached and that plaintiff's recovery should be limited to the reserve value of the policy; that *Bull v. Sun Life Assur. Co.*, infra, was distinguishable, and that it did not regard *Sovereign Camp W. O. W. v. Compton*, supra, as an authority to the contrary.

In *Green v. Mutual Ben. Life Ins. Co.*, 144 F. 2d 55, (C. C. A. 1st Cir.) decided in 1944, it appeared that in 1941 Green had applied for insurance, stating in his application that he was employed at an aircraft factory and answering a series of questions designed to elicit information concerning his past and present experience with aviation.. He also stated he did not contemplate entering military service within the next year. He received a policy containing a provision that death occurring by reason of any aerial flight or journey was not a risk assumed, but if the insured at the time of such flight should be a fare-paying passenger under stated conditions, the provision should not be effective. In March, 1942, Green enlisted in the naval reserve and became a pilot of a navy bomber. On April 13, 1943, acting under orders and in line of duty he was flying a plane when he was forced to make a landing on the water. Later his body was discovered, along with a partially inflated life raft. Action was instituted on the policy by the beneficiary and the trial court denied relief. In the appellate court the appellant stressed the fact the company chose not to insert a military risk clause; that the risks of civil aviation and those contingent upon military service were separate and distinct, and that in view of answers in the application the insured had in mind only participation in civil aviation and did not contemplate military and naval service, and that the aviation clause should be read as intended merely to exclude from coverage civil and not military risks. The court stated it could dis-

cover no ambiguity in the aviation clause, either patent or latent; that the difficulty with the argument is that there are two types of risk which are to some extent overlapping, and that since Green was not in and did not contemplate military service the company decided not to include a military risk exclusion clause. It stated further that the application did disclose Green contemplated training as a pilot, and on the basis of the information disclosed, it was for the company to say how far it was willing to undertake the risks of aerial flight. Attention was also given to a contention that the clause was inapplicable where the insured flew the plane under orders in military or naval service and the court held that such a reading would go beyond the scope of permissible interpretation and that as the company rightly said, it was interested in the risk itself and not with the reason for the exposure. The court also distinguished the case of *Bull v. Sun Life Assur. Co.*, infra, and held it not applicable.

*Bull v. Sun Life Assur. Co.*, 141 F. 2d 456 (C. C. A. 7th Cir.), was decided in 1944. A writ of certiorari was denied: 323 U. S. 723, 65 S. Ct. 55, 89 L. Ed. 581. The case is also reported in 155 A. L. R. 1014, and is followed by an extensive annotation to which attention has been directed previously. The only question in the case was the proper construction of an endorsement pertaining to airplane flights substantially like that now under consideration. In 1939, Bull applied for the policy, being at the time a naval aviation cadet, of which the company was aware. In February, 1942, Bull was commanding officer and alternate pilot of a seaplane and coming across some Japanese ships at anchor, bombed them. The Japanese answered the fire and injured the plane in which Bull was riding and the plane made a forced landing but stayed afloat for some minutes. While Bull was on the fuselage of his plane, a Japanese plane attacked it, the plane blew up and Bull was never seen thereafter. After noting rules for construction of an insurance contract and that it is elementary such contracts are strictly construed against the company, the court gave consideration to the company's contention that Bull's death was the indirect result of service, travel or flight in an airplane, and after reviewing the facts concluded that the flight was completed when the plane landed; that thereafter and while Bull was on the fuselage he was killed; that while Bull reached the place by airplane flight, he was not injured in the arrival and was not injured by service, travel or flight in an airplane. The

court further concluded that war risks not connected with aviation were clearly assumed and that no construction should be given the contract that would make it applicable if a personal enemy shot Bull but inapplicable if a public enemy shot him. The court affirmed a judgment allowing recovery on the policy. Circuit Judge Major wrote a strong dissent, the burden of which was that insured was killed as the indirect result of an airplane flight.

*Durland v. New York Life Ins. Co.*, 186 Misc. 580, 61 N. Y. S. 2d 700, decided in 1946, is not the opinion of a court of last resort. In 1941 Durland applied for insurance, his application answering questions that he did not expect to participate in flying other than as a passenger on commercial lines, or to join or enlist in any air corps, and that because of his agricultural work he would probably be exempt from military service. At the time he was a student at Cornell University. In September, 1942, he enlisted in the naval reserve, was assigned to the air force and was killed in April, 1944, when the naval plane on which he was a crew member crashed into a mountain top. The policy of insurance contained an aviation rider providing that anything in the policy to the contrary, the death of the insured as a result, directly or indirectly, from operating or riding in any kind of aircraft, otherwise than as a fare-paying passenger was a risk not assumed. The policy contained a clause that it was free of conditions as to residence, travel, occupation and military or naval service. This clause was marked with a rubber stamp, "Except as provided by Aviation Rider Attached hereto." In an action by the beneficiary she contended the policy being free of conditions as to military service, the aviation clause created an ambiguity as to the intent of the contract and that the policy indicated the intention of the parties to it to be that the aviation rider related only to civilian flying. Other contentions need not now be noticed. In its opinion the court stated that had the contract contained only the military clause and the aviation rider, it might be a sufficient ambiguity would be presented to permit a construction that insured was covered in all risks in the naval service, including aviation, and further that the aviation rider was intended to relate only to civilian aviation, citing in support *Sovereign Camp W. O. W. v. Compton, Paradies v. Travelers Ins. Co.*, and *Schifter v. Commercial Travelers Mut. Acc. Ass'n.*, all supra. The court then discussed plaintiff's contentions as to the effect of the rubber-stamp endorsement and held that clearly it could have been no one's

intention the imprinted words modified the "Incontestability" clause, and not the military clause, as "Such a construction would be neither reasonable nor intelligible." The court concluded the policy was not ambiguous in respect to aviation coverage and that the true intent was that risks of naval or military service were limited to such risks other than the aviation rider. *Green v. Mutual Benefit Life Ins. Co.*, and *Hyfer v. Metropolitan Life Ins. Co.*, both supra, are cited in support. Judgment was rendered for the company.

Our attention has also been directed to *Richardson v. Iowa State Traveling Men's Assn.*, 228 Iowa, 319, 291 N. W. 408, decided in 1940. We notice this case briefly. Richardson procured a certificate of insurance against accidental death. Under head of "Conditions, Limitations and Exceptions," it was provided the association should not be liable for death for injuries received in, on or caused by any aeriel conveyance except when a passenger on certain described commercial planes. Insured was a government employee, but not in the armed services. Under orders of a superior he made a trip on an army airplane which crashed, causing his death. In the decision the supreme court noted that there were few decisions to guide it. We shall not comment on those it did mention, reference being made to the opinion. The court found that death was caused by aerial conveyance; that the association had provided the circumstances under which it would be liable; that it did not assume any other risk of air travel and that flight in an army airplane was not within the exception in the aviation provision and that judgment should be for the association.

Was the present policy of insurance with its attached aviation provision ambiguous? Appellee contends that it was; that insured answered the two portions of question 9 of the application, and upon those answers the company issued the policy with the aviation provision but without any war clause; that under the circumstances there is ambiguity whether the aviation provision refers to all types of flight or only to civilian flight, and being ambiguous is to be interpreted most favorably to the insured. As has been shown the rule for interpretation is correct, but is the premise for the claimed ambiguity?

It may not be doubted that the insurer prepared the contract and if it did not make its meaning clear, it must suffer. It is to be remembered that the company, however, could determine what risks it would cover by the policy it issued. It was at liberty to

assume war risks and aviation risks as it chose. On the basis of the above answers, it did not attach a war clause but it did attach the aviation provision. Did the fact the company did not attach a war clause make the aviation provision ambiguous? We think not. As has been noted in some of the cases reviewed above, it is fallacious reasoning to say that because a policy fails to exclude war risks, the scope of the contract which clearly excluded certain deaths in aerial flights, is, because of such failure, to be construed to cover all war risks and so to cover deaths in aerial flights of the excluded kind. See the Hyfer, Green and Durland cases above noted. The language in the aviation provision stating that death as a result of flight "in any species of aircraft" except as a passenger under stated circumstances "is a risk not assumed," is clear and is not ambiguous because there was no war risk clause attached to the policy.

Neither may it be said that the clause refers only to civilian flights and not to military flights. Its language refers to flight "in any species of aircraft," about as all-inclusive language as could be used. We are not warranted in reading into this plain language, any words that would modify that language and make it say something other than was said. As was said at an earlier part of this opinion, where a contract is not ambiguous this court may not make another contract for the parties; our function is to enforce the contract as made. See the Hyfer, Green and Durland cases above mentioned.

Closely connected with the matter just discussed is the further contention that the provision refers to voluntary flights and not to flights made under military or other compulsion. As was said in the Hyfer and Green cases reviewed above, such a reading of the provision would go beyond the scope of permissible interpretation. To read into the contract a provision such as is now contended for would not only result in a new and different contract than the parties made, but it would be contrary to the reasoning of the *State Highway Construction Contract Cases,* supra. If a contract is not to be performed as written by reason of *vis major,* provision to that effect should be included in the contract (13 C. J. 641, 17 C. J. S. 955, 12 Am. Jur. 930). There is no such inclusion here, and we are not warranted in construing the contract as though there had been.

In our opinion the three cases relied upon by appellee, and previously noted, may not be said to warrant the judgment in her favor. The Compton case, although somewhat similar on issuance of the

contract and the manner of death, is clearly distinguishable on the terms of the beneficiary certificate which the insured received. In the Paradies case the court put weight on a reserved right to attach a military clause to the policy, failing which the court reached its conclusion of liability. So far as we can find the case has been cited but once and then it was not followed. The Schifter case, whether sound in its reasoning or not, is distinguishable upon the facts, as our review of it makes clear. The Bull and Richardson cases will not be commented on, although each is distinguishable from the case before us.

In our opinion the trial court erred in its judgment, which is reversed, and the cause is remanded with instructions to render judgment for the defendant.

HARVEY, C. J., SMITH and PARKER, JJ., dissent.