[Civ. No. 9795. First Appellate District, Division One.—July 3, 1936.]

LILLIAN WHELAN FITZPATRICK, Plaintiff and Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Defendant and Appellant; MARY C. WHELAN, Cross-Complainant and Respondent.

F. Eldred Boland, Daniel V. Ryan and Knight, Boland & Riordan for Appellant.

David M. Burnett, John M. Burnett, D. C. Kirby, R. M. Holstein and Jensen & Holstein for Respondents.

KNIGHT, J.—The appellant insurance company issued a policy of accident insurance to John J. Whelan calling for the payment of the principal sum of $5,000 in the event his death was "caused directly and independently of all other causes by violent and accidental means", and double the principal sum if death was caused by injury received "while riding as a passenger in a regular passenger elevator car". The insured was superintendent of a fruit packing plant in San Jose, owned and operated by Guggenhime & Co., and was killed while riding in an elevator in said plant. The insurer tendered payment of the principal sum of $5,000, but the beneficiaries under the policy demanded payment of the double indemnity, and upon the refusal of the insurer to pay the same brought this action to collect it. The trial took place before a jury, which awarded a verdict in favor of the beneficiaries for the full amount claimed, and the insurance company has appealed from the judgment entered on said verdict.

There is no dispute about the circumstances attending the accident, but as grounds of appeal appellant contends that,

contrary to the implied findings of the jury, the admitted facts of the case establish as a matter of law that the elevator in which the insured was riding at the time he met his death was not a "regular passenger elevator", and in any event that he was not riding therein "as a passenger". It is our opinion that the evidence is legally sufficient to sustain the conclusions reached by the jury on both issues.

The building in which the accident occurred was three stories in height, and was entirely occupied by Guggenhime & Co. in carrying on the business of drying and packing fruits. The only elevator operated therein was the one in which the accident occurred. It was of the hydraulic type, raised and lowered by water power, and operated by means of a cable which by pulling opened a valve and let in the water pressure. The dimensions of the floor of the elevator car were six feet by seven feet. The rear and side walls were constructed of heavy wire mesh or netting extending from the floor nearly to the elevator ceiling, which consisted also of wire mesh. The entire front side of the elevator was open. The elevator shaft was enclosed only part way up between the floors of the building, and on each floor the entrance to the elevator was protected by a gate which was raised and lowered by the movement of the elevator.

The insured was alone in the elevator when the accident happened. Shortly prior thereto he stated that he was going to get a hand truck and go to the third floor to get some samples of dried fruit. Ten or fifteen minutes later two employees who were on the third floor heard the insured place the truck on the elevator on the first floor, pull the cable, and start to ascend. Then they heard a noise indicating that something had gone wrong with the elevator, and upon investigating found that it had stopped just as the elevator floor was about to reach the level of the third-story floor; the insured was lying on the floor of the elevator with his head projecting over the edge and it was being crushed between the two floors. Alongside of the injured was the empty truck, a couple of sample pans, and a few paper bags. An operator was regularly employed by the Guggenhime company to run the elevator, but when he was not on duty it was operated by any of the employees who had occasion to use it, and the accident to the insured happened early in the morning before the regular elevator operator reported for work.

With respect to the use of the elevator the evidence shows beyond question that it was used indiscriminately for the carriage of both freight and human beings. The fruit manufacturing processes were conducted on the second and third floors, and the employees used the elevator generally and constantly, not only in going from one floor to another in the performance of their duties, but also to convey customers and visitors up and down whenever they had occasion to transact business on or visit the second and third floors. In this regard one of the employees testified that "in the summer time it is practically every two or three minutes a day a person might be going up". There was a sign hung on the rear wall of the elevator reading: "This elevator is for freight only. This means you. Guggenhime & Co."; but the testimony shows that neither the company nor its employees considered it a violation of the company's rules for employees to use the elevator themselves whenever necessary or convenient, or to convey other persons therein; that the sign was displayed merely to stop people not having business with the company from using the elevator for their own pleasure.

█ It has been definitely settled in this state that where as here an insurance company offers special inducements to become insured against the risk of injury or accidental death by promising payment of a double indemnity in case the insured is injured or killed under specified circumstances, technical construction of the wording of the double indemnity clause will not be indulged in, but the terms thereof will be interpreted in their ordinary and popular sense; █ furthermore, that where, as here and in most cases, the policy is drawn by the insurer and an ambiguity arises from its provisions, the clauses of the policy will be construed most strongly against the insurer and most liberally in favor of the insured, and all reasonable doubts arising from any ambiguous language employed will be resolved against the insurer. (*Wilmarth* v. *Pacific Mutual Life Ins. Co.*, 168 Cal. 536 [143 Pac. 780, Ann. Cas. 1915B, 1120].) In the case just cited the policy provided for the payment of double indemnity in case injury or death from violence occurred "while in a passenger elevator (excluding elevators in mines)"; the elevator in question was a large, open one designed to carry automobiles, but as here it had been long

since used to carry both freight and people; and on appeal the Supreme Court in upholding the verdict in favor of the beneficiaries fully approved the trial court's exposition of the law, as embodied in its instructions, governing the determination of the question of when an elevator is deemed to be a passenger elevator, and which instructions were as follows: "The court instructs the jury in this case that a passenger elevator, within the meaning of the terms of the policy of the insured is one in which passengers are ordinarily carried. If you find from the evidence that the elevator referred to in the evidence was one in which passengers were, on and prior to February 11, 1911, carried up and down at various times, it was a passenger elevator within the meaning of the policy, at the time of the injuries received by Wilmarth, although it may have been used for purposes of carrying freight." "The court instructs you that a passenger elevator need not be of any particular form, or made in any particular way, or with any particular contrivance or device. It does not mean that it must be used exclusively for the carriage of passengers. If it is customarily used for the carriage of passengers, this is sufficient to constitute it a passenger elevator within the meaning of the policy. If the jury believe that a large number of persons have been carried at various times in this elevator, as passengers, and has been used daily for the carriage of persons, it then is a passenger elevator." "The court instructs the jury that a passenger elevator need not be of any particular form or size or have any particular kind of gate or safety contrivance. If an elevator is customarily used for the purposes of carrying human beings as passengers from one floor of a building to another floor in the same building, it is to be considered a passenger elevator." The Supreme Court also sustained the trial court's disapproval of the law as set forth in the following instructions proposed by the insurer: "I instruct you that if said elevator was designed and constructed for the carriage of freight and was prior to and up to the time of the injury to the insured used for the carriage of freight, then said elevator is not a passenger elevator within the terms of the policy of insurance issued by the defendant to said insured." "I instruct you that an elevator designed and constructed for the purpose of carrying freight and used in the carriage of freight, although the same may at times

be used for the carriage of passengers, is not a passenger elevator within the meaning of the policy of insurance referred to in the pleadings and evidence in this case."

 When the admitted facts of the case now before us are measured by the foregoing legal standards, there is no reasonable ground upon which it may be held as a matter of law, contrary to the implied findings of the jury, that the elevator in question was not a passenger elevator.

Appellant points out that the double indemnity clause in the present case reads, "a regular" passenger elevator car, but obviously the presence of the additional word "regular" does not remove the case from the scope of the decision in the Wilmarth case, *supra*, for the reason that as held in *Blood* v. *Industrial Acc. Com.*, 30 Cal. App. 274 [157 Pac. 1140], and as set forth in one of appellant's instructions herein, which the court gave, the word "regular" as used in said clause "means a systematic or periodic use, and not a mere occasional or incidental use"; and the evidence here establishes, as already shown, that the elevator was used universally and constantly for the conveyance of persons. In any event, as held in the Wilmarth case, *supra*, the question of the character of the elevator is doubtless one of fact; and in our opinion the evidence above narrated is legally sufficient to support the jury's finding on this issue.

Appellant in its brief quotes extensively from and to a large extent relies upon the case of *Losic* v. *Royal Indemnity Co.*, 183 App. Div. 744 [171 N. Y. Supp. 174]; but an examination of the decision therein clearly shows that it is not controlling here nor at variance with the decision in the Wilmarth case for the reason that as expressly stated in the New York case, the facts therein relating to the use of the elevator "were very different" from those of the Wilmarth case; and unlike in the Wilmarth case, the jury in the New York case, as the trier of the facts, found from the evidence before it that the elevator in question was not a passenger elevator. Several other cases from outside jurisdictions are cited, but it is not necessary to review them here because even though it were to appear that the precise question here involved was there decided according to legal standards at variance with those established in the Wilmarth case, the law as laid down in the Wilmarth case by the Supreme Court of this state would still prevail.

■ Nor in our opinion can it be held contrary to the finding of the jury, as appellant contends, that the mere fact that the insured at the time of the accident was an employee of the company maintaining the elevator and was carrying on his duties as such, in itself exclude him from the passenger classification. The authorities cited by appellant in support of its contention are not in point. Scarcely any of the railroad cases cited involve insurance contracts. They were actions for damages brought against railroad companies based on alleged negligence, wherein the fellow servant or assumption of risk doctrines intervened as successful defenses. And the few which were brought to recover on insurance policies grew out of accidents which happened to persons while riding on trains on which they were employed, and were decided adversely to the claimants pursuant to the general rule fixed for the determination of the status of persons traveling on railroad trains, which in our opinion cannot be logically applied in determining the status of persons riding in elevators for the reason that such rule is based fundamentally, as will appear from those decisions, upon the proposition that the term "a passenger on a railroad train" in its generally accepted sense, applies to persons carried for hire by virtue of an express or implied contract, and therefore necessarily excludes employees connected with the operation of the train and other persons employed thereon. The elevator cases cited by appellant are likewise not controlling for the reason that they were actions against the owners for damages based on alleged negligence, wherein it was held that the victims of the accidents were trespassers.

Other than seeking to invoke the rule applied in railroad cases, appellant advances no argument which would justify the adoption of a broad judicial doctrine denying the status of passenger generally to all employees while riding in their employers' elevators in the pursuance of their employments. Nor are we prepared so to hold for the reason that under such a doctrine many thousands of employees in this state, private and public, who in the performance of their duties are obliged to ride daily in regular passenger elevators maintained in their employers' buildings, would be precluded in actions based on accident insurance policies from claiming the status of passengers merely because of their legal relation-

ship as such employees and the fact that they are engaged in transacting their employers' business.

Neither, in our opinion, can it be successfully maintained that the insured's status as a passenger was destroyed by the fact that he was operating the elevator at the time he was killed, for the reason that admittedly he was not employed as the regular elevator operator; and bearing in mind as a matter of common knowledge that in all larger population centers many apartment houses, hotels and business buildings maintain elevators therein of the so-called self-operating type, it would be a far-fetched doctrine which would declare that in all such cases a person using an elevator of that type is not a passenger therein merely because he manipulates the mechanical device which automatically controls the movement of the elevator.

■ Appellant complains also of the giving and refusal to give some eleven instructions. Several of those objected to are not set out at all in appellants brief; others are only partially quoted; and appellant failed to set out or refer to a number of other instructions which the court gave relating to the same subject-matter as those challenged. However, we have examined all of the assignments of error made in connection with the instructions and are satisfied that said assignments are without merit. Instructions numbered 1, 4, 6, 7, 8, 9 and 10 were clearly amplified by the giving of additional instructions, and when all are read and considered together they cannot be said to be either confusing or misleading, and in our opinion they correctly and fully stated the law. Instructions ''A'' and ''D'' proposed by appellant and by the court refused were based upon appellant's erroneous theory as to the passenger status of an employee while riding in an elevator; and appellant's proposed instructions ''B'' and ''F'' were properly rejected under the authority of the Wilmarth case.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 1, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 31, 1936.