**EMPLOYERS CASUALTY CO. v. LANGSTON.**

**No. 11819.**

Court of Civil Appeals of Texas.
San Antonio.

May 19, 1948.

Rehearing Denied June 16, 1948.

Eskridge & Groce, of San Antonio, for appellant.

McKay & Avery, of Austin, for appellee.

NORVELL, Justice.

On January 5, 1947, O. L. Langston, an employee of Liberty Mills, San Antonio, Texas, boarded a man-lift which consisted of a wide belt to which platforms and hand-holds were affixed at intervals. In using this lift, the passenger stands on the platform and holds onto the hand-holds while ascending or descending. Langston was riding the ascending side of the man-lift when the mechanism failed, causing the belt to reverse and throw him through the well or shaft provided for the movement of the belt onto a concrete floor three stories below, causing fatal injuries. The circumstances of the tragedy are detailed in the opinion this day handed down by us in Cause No. 11817, styled Alma Belle Langston v. Tex-O-Kan Flour Mills Company, Tex.Civ.App., 211 S.W.2d 1020.

Langston had an insurance policy with appellant, Employers Casualty Company, which provided for the payment of double indemnity to the designated beneficiary, Alma Belle Langston, the appellee, if the insured were killed "while a passenger in an elevator car provided for passenger service only, other than the elevator cars in mines."

The company has paid the sum of $500.00 under the provisions of the policy relating to death from general accidents. The trial court was of the opinion that, under the insuring clause above set out, the company

was liable for an additional $500, and rendered judgment accordingly.

The facts are stipulated. One point of error only is presented, to-wit: "The error of the court in ruling that plaintiff's husband was a passenger in an elevator car and entitled to double benefits.

To conclude that Langston was killed while "in an elevator car" seems to require a strained construction of the language of the policy. Appellee seeks to support the judgment by applying the well-known rule of strict construction against the insurer and by taking the phrase apart and considering the component words thereof. For instance, our attention is directed to the statement in 42 C.J.S., In., page 474, wherein the following is said:

"IN.—In General. While 'in' has been characterized as having well understood meanings, it has also been said that it is a word of indeterminate meaning and that, unqualified, it is an indefinite preposition; * * *

"—Place or Situation. The word conveys the idea of location in, or attachment to, a place or thing; and in its most usual significance and popular use, with reference to place or situation, 'in' generally means inclosed or surrounded by limits; * * * and it does not necessarily imply a wholly or partially inclosed place."

We are likewise cited to Burrus v. Continental Life Ins. Co., 225 Mo.App. 1129, 40 S.W.2d 493, in which it was held that a person riding on a motorcycle was within the insuring clause of a policy covering injury "by the wrecking or disablement of any * * * motor driven car * * * in which the Insured is riding * * *."

It is urged that the word "car" is a generic term and sufficiently broad to embrace a platform such as the one here involved.

▇▇▇ In our opinion, we must consider the phrase as a whole. The meaning of words often depends upon their context. Had the phrase in question been simply "in an elevator," perhaps the connotation of the word "in" as suggesting an enclosure might be properly disregarded and the preposition treated as the equivalent of "on", thus making the phrase applicable to a belt

lift equipped with platforms. However, in the phrase here involved the word "car" is used in apposition with the word "elevator," as an explaining or limiting adjunct. We are not at liberty to say that the word "car" was inserted into the contract for no purpose and that the meaning of the phrase is the same as if the word had not been employed. We, therefore, conclude that the phrase "in an elevator car" means something more than being on an unenclosed step or platform. An area at least partially enclosed is suggested by the phrase. As relating to risk or danger, the difference between the usual type of enclosed passenger elevator and the man-lift here involved is deemed apparent.

▇▇▇ With abundant citation of authorities, the rule of law applicable to this appeal is stated by Appleman as follows:

"It has been the rule that insurance contracts should be properly construed according to the normal tenor and meaning of the terms employed so as to carry out the intention of the parties, and if any question arises, it should be liberally construed in favor of the insured. Frequently, however, this rule is stated in converse form, that while interpretations should be liberal toward the insured where ambiguity or doubt arises, this rule does not justify abandoning principles of normal interpretation where the contract is clear, or taking such a construction as would vary the true meaning of the contract and the intention of the parties.

"From such general rules, however expressed, the courts have adopted a general doctrine to the effect that the rule of construing contracts stringently against the insurer and liberally to favor the insured is to be applied only when the language used in the policy contract is ambiguous. If the language employed is unambiguous, this doctrine has no application, since the rights of the parties must then be determined from the contract. Nor can the doctrine of liberal construction be invoked in order to permit a strained or loose interpretation of the policy provisions so as to raise an ambiguity in the contract which does not exist, or to raise a liability clearly not contemplated by the policy terms, the court having no authority, under the guise of liberal construc-

tion, to make a new contract for the parties containing provisions upon which they had not agreed. The court is unwarranted in using any guide other than the common and ordinary meanings of the words employed in making its determination of liability or nonliability under the liberal construction rule, and taking a strained or unwarranted interpretation of the words employed in order to raise an ambiguity would be unjustified. The doctrine of liberality does not operate to deprive such terms of their ordinary significance. * * *" 13 Appleman, Insurance Law and Practice, § 7402, page 87.

The judgment of the trial court is reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.