No. 38,052

MARY E. BRALY, *Appellee*, v. COMMERCIAL CASUALTY INSURANCE COMPANY, *Appellant*.

(227 P. 2d 571)

532

*John F. Hayes,* of Hutchinson, argued the cause, and *Donald C. Martindell, William D. P. Carey, Wesley E. Brown, Edwin B. Brabets, Robert J. Gilliland, C. William Miller* and *Robert C. Martindell,* all of Hutchinson, were with him on the briefs for the appellant.

*Abraham Weinlood,* of Hutchinson, argued the cause, and *Don Shaffer,* of Hutchinson, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover death benefits under an accident insurance policy. The appeal is from a judgment for plaintiff, wife of the deceased insured and beneficiary under the policy, rendered by the trial court upon special and general verdicts returned by a jury. Errors, assigned as grounds for reversal of the judgment and essential to disposition of the appeal, will be given consideration in the order in which they appear in defendant's specification of errors.

On March 6, 1941, defendant Commercial Casualty Insurance Company issued an accident policy of insurance to H. F. Braly, a resident of Coldwater, for an annual premium of $1 per year. The policy provided death benefits only under specified limited conditions in the amount of $1,500, which increased $100 per year for 5 years if the policy should be kept continuously in force, payable to the wife of the insured as beneficiary.

Included in the policy thus issued is a provision that the death benefit covered by its terms should be payable if the accidental death of the insured should occur:

"While riding as a passenger IN A PASSENGER ELEVATOR used for passenger service only in a place regularly provided for the sole use of passengers."

Such policy also contains an exception clause which reads in part:

"This insurance does not cover . . . death or loss . . . while getting on or off a conveyance. . . ."

For all purposes of this appeal it is conceded H. F. Braly met his death by external, violent and accidental means on November 18, 1943, that on such date he had paid premiums on the policy for three years bringing death benefits under the conditions there specified to $1,800, that proof of loss was made by the beneficiary (plaintiff) within the time and manner required by its terms and that in view of the conditions and circumstances under which the insured met his death provisions of the policy on which the rights of the parties must ultimately depend are those heretofore quoted.

At the outset appellant contends the trial court erred in over-ruling its demurrer to the petition. No useful purpose would be served by setting forth the allegations of that pleading in detail. It suffices to say it contains express allegations to the effect the insured met his death while riding as a passenger in a passenger elevator located in a grain elevator and other averments of similar import which, if given the benefit of inferences to which they are entitled under the record, state facts sufficient to constitute a cause of action on the policy.

The next three errors relied on by appellant as grounds for reversal of the judgment can be considered together. In our opinion they present the most difficult questions involved in the law suit. They are that the trial court erred (1) in overruling its demurrer to appellee's opening statement to the jury, (2) in overruling its demurrer to her evidence, and (3) in overruling its motion for judgment notwithstanding the general verdict.

Except for one question to which we shall presently refer, the gist of the over-all position of appellant on all three of the errors thus assigned is the same and is to the effect that the opening statement, the evidence, and the answers of the jury to the special questions show that the conveyance located in the grain elevator where the insured was working, and in which it is conceded he was riding immediately prior to his death, was not a passenger elevator used for passenger service only in a place regularly provided for the sole use of passengers, hence there is no liability under the policy sued on. This position necessarily requires an examination of the evidence and the answers returned by the jury to special questions. The opening statement requires little attention inasmuch as the record discloses it was in line with evidence subsequently adduced by the appellee and must stand or fall upon our decision with respect to the legal sufficiency of the facts disclosed by the testimony on which appellee relies to sustain her cause of action.

Summarized as to substance the fair import of the evidence can be stated as follows:

The Wolcott-Lincoln Grain Elevator Company maintains and operates a grain elevator at Coldwater. The building in which it carries on its business is a structure consisting of several floors or stories. Ascent and descent to and from the upper floors of the structure is accomplished by means of ladders or by riding on

the conveyance herein involved, referred to by the witnesses as a "lift." This lift is a one man conveyance operated by the person riding it, is used exclusively by human beings, chiefly employees and inspectors, and is never employed for the purpose of carrying freight.

The construction of the conveyance heretofore mentioned, reflected by the testimony of the witnesses, is described by appellee in her brief as follows:

"Its floor was a wood platform some two to three feet square. A frame consisting of uprights and a cross beam at their top was attached to the floor. On the floor and within this frame stood the person riding. The 'chute' or shaft was formed of a framework of guides, runners and tracks, within which the conveyance was raised and lowered. To the top of the frame of the conveyance was attached a cable, which ran over a pulley at the top of the building, and back down. At the other end of the cable weights were attached, furnishing gravity power for the conveyance. The weight of the rider, supplemented, if necessary, by weights, counterbalanced the cable weights to control the rise or drop. A foot operated brake, working against the guides of the shaft, stopped the conveyance. At each floor a hole and pin arrangement on a cross beam held the elevator stationary when it was not in use. At each floor above the bottom, the elevator passed through an opening just large enough to accommodate it, with two or three inches to spare on each of three sides, and about eight inches clearance at the front. All about these openings, and all along the path of the shaft, were floor and wall joists and supports, and large and small beams of various kinds . . ."

On November 18, 1943, the insured, H. F. Braly was employed by the company above named. While engaged in the performance of his duties, and for some purpose of no consequence to the issues, he went to and got upon the conveyance in question, started it and rode it upward out of the sight of two other persons who were on the ground floor, one of whom was an employee of the company and the other a bystander. Each of these individuals testified at the trial. Their testimony was to the effect that they saw Braly start up on the lift, that they did not hear it stop at any floor landing until it hit the top of the grain elevator and that the next they saw of him was when his body came hurtling down the shaft feet first and crashed upon the ground floor.

So far as the record discloses W. E. Richardson, the employee who was working with Braly at the time he started up on the lift, testified at greater length than any other witness produced on behalf of the appellee. With respect to matters not heretofore mentioned he stated in substance that no one saw and he did not

know what took place after the elevator left the ground floor or at the top of the elevator where Braly was but that whatever happened resulted in his death; that when he examined the body after it hit the floor he found the deceased had a fracture back of the left ear and noticed a mark over his eye or on his temple although he could not recall whether it was located on the right or left side; that after that examination he went to the third floor of the elevator and there near the shaft opening found the deceased's hat and observed that the pin for holding the elevator at such floor was in an upward position at an angle about 45 degrees or better. He also stated during his examination that with this pin in that position the elevator would go on past the third floor and to the top of the shaft and that he did not know whether Braly had been off the elevator before it hit the top.

With the foregoing evidence and some other testimony of similar import the appellee rested her cause.

The record with respect to evidence offered by the appellant is not complete. Attached to its abstract are two photographs of the lift marked defendant's Exhibit "1" and defendant's Exhibit "3" and we shall assume its Exhibit "2" was of a similar nature. At any rate the matter is of little moment and need not be labored for in its brief the appellant states "There is no dispute in the facts; the lower court refused to admit in evidence (referring to defendant's Exhibit "4") the only testimony offered by defendant." Be that as it may the record does reveal that after resting her case appellee was called as a witness on behalf of the appellant and asked questions to which she made answers as follows:

"Q. In connection with your claim under this policy did you write a letter to the Commercial Casualty Insurance Company? A. Well, I had forgotten but I would have to see my handwriting.

"Q. I will hand you Defendant's Exhibit '4,' and ask you if that is your signature on that? A. Yes. That is my handwriting."

It further discloses that thereafter appellant sought to introduce this Exhibit in evidence and that an objection to its admission was sustained by the trial court on the ground it was hearsay. Appellant then rested without evidence other than the three Exhibits to which we have heretofore referred.

Inasmuch as the rejected Exhibit becomes of importance later in this opinion it had just as well be quoted at this point. It reads:

"Commercial Casualty Insurance Co.
Loyalty Group
Newark, 1, New Jersey

"Coldwater, Kansas
December 7, 1943

RE: Claim Number-370496
Policy No. S-381067
Series 77
Insured—Mr. H. F. Braly

"Attention: F. M. Tahl, Claim Examiner (deceased)
Accident and Health Division

"Gentlemen:

"You asked for some of the circumstances surrounding my husband's death.

"Mr. H. F. Braly was employed as manager of the Wolcott-Lincoln Grain Elevator in Coldwater. On the afternoon of November 18, 1943 Walter Richardson, who worked for Mr. Braly, dumped a load of wheat for Eddie Metzger. A grain spout seemed clogged so Mr. Braly went up on the man-lift to inspect it. They could see by his tracks in the dust where he had walked over to the bin and returned to the man-lift to come down. Both Mr. Richardson and Mr. Metzger were in the driveway of the elevator when they heard a terrible noise caused by the man-lift flying to the top of the elevator. They then saw Mr. Braly fall down the elevator shaft. He had been struck on the forehead probably by the man-lift as it shot past him, and causing a concussion, a deep cut was on the back of his head and he was terribly bruised all over. The men think when he attempted to step on the man-lift the pin which held it slipped out too soon before he could catch it, the man-lift flying up and knocking him in the head, throwing him off balance, causing him to fall down the elevator shaft.

"I trust this explanation is the information you need.

"Very truly yours,
/s/     MARY E. BRALY
(Mrs.) MARY E. BRALY."

The special questions and answers returned by the jury on which appellant bases its claim the trial court erred in overruling its motion for judgment *non obstante* read as follows:

"Q. No. 1. Was the conveyance which H. F. Braly used to go to an upper floor or level of the grain elevator of the Farmers Elevator Company at Coldwater, Kansas, shortly before his death a 'Passenger Elevator,' as that term is commonly used? A. No. 1. Yes.

"Q. No. 2. If you answer the first question in the affirmative was H. F. Braly riding as a passenger in said elevator at the time of the accident which caused his death? A. No. 2. Yes.

"Q. No. 3. If you answer the first question in the affirmative was said elevator in a place regularly provided for the sole use of passengers? A. No. 3. Yes.

"Q. No. 4. If you answer the first question in the affirmative was H. F. Braly getting on or off of the elevator at the time of the accident which caused his death? A. No. 4. No.

"Q. No. 5. If you answer Question No. 1 in the affirmative, then state: (a) Was the elevator for the use of employees only? Answer Yes (b) How many adults could ride in the elevator at the same time? Answer One (c) Was the elevator used primarily by employees for their convenience in performing their regular duties? Answer Yes (d) What power, if any, was used to operate the elevator? Answer gravity & weight."

The first contention advanced by appellant in support of the over-all position to which we have previously referred is that the term "passenger elevator" as used in the first provision of the policy, heretofore quoted, has such a plain, ordinary, and well recognized meaning that it must be construed as having reference only to elevators provided for the use of the general public in office buildings, retail stores, hotels, apartment houses and other buildings of such character or, in any event, must be construed as a matter of law as excluding conveyances of the character herein involved even though used exclusively for the purpose of carrying passengers.

It must be admitted, as the parties agree, there are no Kansas cases on the issue thus raised. Indeed appellant goes so far as to say it has been able to find but one reported case, and that a decision of a Nisi Prius Court (*Ray v. Accident Insurance Co.*, 19 Ohio N. P. N. S. 140; 27 Ohio D. N. P. 266; 96 A. L. R. anno 1412), directly in point. It should be said our somewhat extended research has revealed another (*Employers Casualty Co. v. Langston* [Tex. Civ. App.] 214 S. W. 2d 131), involving facts and circumstances quite similar to those herein involved, upholding its position. Even so it must be kept in mind the rules to be applied in the construction of insurance contracts are well established in this jurisdiction and that we are not bound to follow the decision of a court of some foreign jurisdiction if upon application of our established principles of contractual construction, or others to which we subscribe, we are unable to agree with its result.

Some of the established principles to which we have referred and decisions supporting them are to be found in our decision in *Knouse v. Equitable Life Ins. Co.*, 163 Kan. 213, 181 P. 2d 310, which holds:

"If the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail.

"As an insurer prepares its own contracts and it is its duty to make the meaning clear, if it fails to do so, the insurer and not the insured must suffer.

"Courts should not be astute to evade the meaning of words manifestly

intended by the parties, but where an insurance contract is unambiguous it must be enforced according to its terms," (Syl. ¶¶ 1, 2, 3.)

Another such principle appears in the opinion of *Spence v. New York Life Ins. Co.*, 154 Kan. 379, 383, 118 P. 2d 514, where it is said:

". . . the words of contracts of insurance are to be construed according to the meaning of the terms used, and if it is clear and unambiguous its terms are to be taken and understood in their plain, ordinary and peculiar sense, (citing cases) . . ." (p. 383).

Still another is that the language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties at the time it was made as expressed therein. It is to be noted, however, that in the application of this rule the test is not what the insurer intended the words of the policy to mean but what a reasonable person in the position of the insured would have understood them to mean. (See *Koehn v. Union Fire Ins. Co.*, 152 Neb. 254, 40 N. W. 2d 874, also, *Hoyt v. New Hampshire Fire Ins. Co.*, 92 N. H. 242, 29 A. 2d. 121, and cases there cited.)

After careful consideration of all of appellant's arguments, and notwithstanding the two decisions on which it relies, we are unable to agree with its position the phrase "a passenger elevator" is entitled to the construction appellant would have us give it. On the contrary, our view is, that such phrase is a generic term covering more than a single type of passenger elevator and susceptible of more than one construction. Therefore, application of the foregoing rules of contractual construction requires that the phrase be construed in the sense most favorable to the insured. That, since appellant prepared its own policy, means that if it desired to exclude passenger devices of the type disclosed by the evidence it should have specifically excluded them and that having failed to do so it must suffer the consequences. It follows the question whether such conveyance was a passenger elevator, within the meaning of that term as used in the policy, was one of fact and properly submitted to the jury.

In holding as just indicated, we frankly confess, we have failed to find any reported case that can be classed as directly in point. However, it can be said our examination of the authorities has revealed several decisions wherein courts have refused to uphold contentions similar to those advanced by appellant and hold in accord with our decision. See *Wilmarth v. Pacific Mut. Life Ins. Co.*,

168 Cal. 536, 143 Pac. 780, holding that under an accident insurance policy providing for double indemnity for any bodily injury sustained by an insured while in a passenger elevator, the term "passenger elevator" did not refer to a definite type of elevator, but included any elevator ordinarily or customarily used for conveying passengers, though also used for conveying freight, and though not of any particular form, made in any particular way or with any particular kind of gates or safety contrivances. See, also, *Fitzpatrick v. Metropolitan Life Ins. Co.*, 15 Cal. App. 2d 155, 59 P. 2d 199; *Boles v. Royal Union Life Ins. Co.*, 219 Iowa 178, 257 N. W. 386; 96 A. L. R. 1400, anno at 1410; *Losie v. Royal Indemnity Co.*, 171 N. Y. S. 174. By analogy, *Smith v. Connecticut General Life Insurance Company*, 18 Pa. District & County Reports 230, is to the same effect.

In passing it should perhaps be said that even if the term "passenger elevator" as used in the policy was to be regarded as unambiguous we would still be unwilling to say, as a matter of law, that when given its plain and ordinary meaning or subjected to the test applicable when construed in such manner as to give effect to the intention of the parties at the time it was included in the policy as executed that it was intended to or did exclude a passenger conveyance of the type disclosed by the evidence.

It is next argued the demurrer should have been sustained because the insured was not riding the elevator "as a passenger". The burden of appellant's argument on this point is that Braly was riding such conveyance as an employee in the performance of his duties and that such phrase must be construed as excluding employees from the passenger classification. Again we cannot concur in appellant's construction of the contract. Instead we adhere to the rule announced in *Fitzpatrick v. Metropolitan Ins. Co.*, supra, holding the fact an insured at the time of an accident on an elevator car was an employee of the company maintaining the elevator and was carrying on his duties as such did not exclude him from "passenger" classification under an accident policy providing for double indemnity if death was caused by injury received while riding as a passenger in a regular passenger car, and approve of the statement (See 59 P. 2d 199, 202) appearing in its opinion which reads:

"Other than seeking to invoke the rule applied in railroad cases, appellant advances no argument which would justify the adoption of a broad judicial doctrine denying the status of passenger generally to all employees while riding in their employers' elevators in the pursuance of their employments. Nor are

we prepared to so hold for the reason that under such a doctrine many thousands of employees in this state, private and public, who in the performance of their duties are obliged to ride daily in regular passenger elevators maintained in their employers' buildings, would be precluded in actions based on accident insurance policies from claiming the status of passengers merely because of their legal relationship as such employees and the fact that they are engaged in transacting their employers' business."

There is another sound reason for rejecting appellant's contention on the point last mentioned. That the parties intended the term "as a passenger" as used in the provision of the policy under consideration to include employees is evidenced by the fact that the provision immediately preceding it, providing for liability under other circumstances, reads: "WHILE ACTUALLY RIDING AS A PASSENGER, *and not a railroad employee on duty* . . . within a surface or elevated railroad or subway car . . ." (Emphasis supplied.) Obviously, if appellant had intended to exclude the risk of accidental injury or death to employees in the involved provision of the contract it would have written into it an express exception similar to the one just quoted.

Finally appellant suggests the word "passengers" in the phrase "in a place regularly provided for the sole use of passengers" required the trial court to sustain the demurrer because the evidence disclosed the elevator would carry but one passenger. This suggestion merits little consideration. We believe it is crystal clear the word "passengers" as used in this phrase has reference to the utilization of elevators not their carrying capacity.

The undisputed evidence is to the effect that immediately prior to the accident the insured was riding in an elevator used for passenger service only in a place regularly provided for the sole use of passengers. Even so, and with the contract construed as heretofore indicated, appellant insists the trial court erred in overruling its demurrer because appellee's evidence failed to establish the insured was injured while riding in the elevator. We shall not devote space to a review of the evidence. It suffices to say that even the appellant concedes the evidence discloses the accident resulting in insured's death occurred while he was getting on or off the elevator. The law is clear that under such conditions and circumstances, in the absence of an exception in the contract, appellant would be liable. See 45 C. J. S. 991, § 990(f); 29 Am. Jur. 731 § 970; 5 Couch, Cyclopedia of Insurance Law, 4005, § 1151(k), 1 Appleman 742, § 603. True, as we have heretofore stated, the instant contract con-

tains such an exception. But this fact in and of itself is not enough. The rule in this and other jurisdictions (See *Lamb v. Liberty Life Ins. Co.,* 129 Kan. 234, 282 Pac. 699; *Broyles v. Order of United Commercial Travelers,* 155 Kan. 74, 122 P. 2d 763; 29 Am. Jur. 1083, § 1444, and 46 C. J. S. 440, § 1319 [4] [a] is that where, in an action to recover death benefits under an accident insurance policy, the defendant seeks to avoid liability on the ground the accident or injury for which recovery is sought is covered by some specific exception in the policy the burden is on defendant to prove the facts which bring the case within the specified exception. Here it is not even claimed that appellant met that burden and it is certain it cannot be said appellee's evidence affirmatively established facts which relieved it from doing so.

What has been heretofore stated compels the conclusion the trial court did not err in overruling the demurrer to the evidence. For the same reasons and, since it is clear there is evidence to sustain the answers to the special questions and nothing in such answers to compel the setting aside of the general verdict, we hold there was no error in overruling the motion for judgment *non obstante.*

Heretofore we have indicated the trial court refused to permit the appellant to introduce as part of its evidence a letter written by the appellee, supplementing her original proof of loss and stating the circumstances under which the insured met his death, rejecting it on the ground it was hearsay and therefore incompetent evidence. This letter shows on its face that it was written in reply to the appellant's request for additional information regarding the cause of the insured's death and in our opinion must be regarded as supplementing the original proof of loss. Appellant insists the rejection of this evidence was error and entitles it to a new trial.

The general rule is that proof of injury or death furnished by a beneficiary to an insurance company is admissible in evidence against such beneficiary as an admission against interest, and that rejection of such evidence is reversible error even though the beneficiary, after it is admitted, may contradict adverse statements or admissions appearing therein by showing they were made through inadvertence, mistake, or misinformation and were erroneous. This, it can be stated, is the rule even though the information therein contained has been furnished to the beneficiary by third persons and is based upon statements made by them. (See 7 Cooley's Briefs on Insurance [2d Ed.] 5927 to 5943, incl., § 10[a] to [g], incl., also

3 Appleman Insurance Law and Practice, 83 to 98, incl., §§ 1471 to 1479, incl., 29 Am. Jur. "Insurance" 1115, § 1488; 46 C. J. S. 482 [c] [1].)

*Insurance Company v. Newton,* 89 U. S. 32, 22 L. Ed 793, holds that the preliminary proofs presented to an insurance company in compliance with the condition of its policy of insurance, are admissible as prima facie evidence of the facts stated therein against the insured and on behalf of the company. In the opinion of that case it is said:

"But the court also erred in excluding from the jury the proofs presented of the death of the insured when offered by the company. When the plaintiff was permitted to show what the agent and officers of the company admitted *the proofs established,* it was competent for the company to produce the proofs thus referred to and use them as better evidence of what they did establish.

"But independently of this position the proofs presented were admissible as representations on the part of the party for whose benefit the policies were taken, as to the death and the manner of the death of the insured. They were presented to the company in compliance with the condition of the policy requiring notice and proof of the death of the insured as preliminary to the payment of the insurance money. They were intended for the action of the company, and upon their truth the company had a right to rely. Unless corrected for mistake, the insured was bound by them. Good faith and fair dealing required that she should be held to representations deliberately made until it was shown that they were made under a misapprehension of the facts, or in ignorance of material matters subsequently ascertained.

"There are many cases which hold that where a mistake has occurred in the preliminary proofs presented, and no corrected statement is furnished the insurers before trial, the insured will not be allowed on the trial to show that the facts were different from those stated. The case of *Campbell v. The Charter Oak Insurance Company,* decided by the Supreme Court of Massachusetts, and the case of *Irving v. The Excelsior Insurance Company,* decided by the Supreme Court of the City of New York, are both to this effect. It is not necessary, however, to maintain any doctrine as strict as this in the present case; and possibly the rule there laid down is properly applicable only where the insurers have been prejudiced in their defense by relying upon the statements contained in the proofs. Be that as it may, all that we now hold is that the preliminary proofs are admissible as *prima facie* evidence of the facts stated therein against the insured and on behalf of the company. No case has come under our observation, other than the present, where the preliminary proofs presented by the insured have been entirely excluded as evidence when offered by the insurers, the question being in all the cases whether these proofs estopped the insured from impeaching the correctness of their statements, or from qualifying them, or whether they were subject to be explained and varied or contradicted on the trial." (pp 35, 36.)

For just a few of the many other decisions to the same effect see *Pythias Knights Supreme Lodge v. Beck,* 181 U. S. 49, 45 L. Ed. 741, 21 S. Ct. 532; *Crotty v. Union Mutual Life Ins.,* 144 U. S. 621, 36 L. Ed. 566, 12 S. Ct. 749; *Tobin v. National Casualty Co.,* 63 Cal. App. 578, 219 Pac. 482; *Lockway v. Modern Woodmen of America,* 121 Minn. 170, 141 N. W. 1; *Thornell v. Missouri State Ins. Co.,* (Tex) 249 SW 203; *Union Mut. Aid Ass'n v. Carroway,* 201 Ala. 414, 78 So. 792. See, also, Roses Notes on U. S. Reports Vol. 8 (revised Ed.) 782 to 786 incl., and 1 A. L. R. (2d) Anno. 365, also *Jensen v. Continental Life Ins. Co.,* 28 Fed. 2d 545.

Decisions of courts of this state dealing with the admissibility of a proof of loss when an insurer seeks to introduce it in defense of an action on an insurance policy are not numerous. However, it can be said that those giving that question consideration have recognized and indicated approval of the general rule announced in the decisions and authorities heretofore cited.

Long ago in *Modern Woodmen v. Von Wald,* 6 Kan. App. 231, 49 Pac. 782, it was held:

"Where proofs of death are required by such fraternal order to be made to it before any right to recover for such benefits should accrue to the claimant, proofs of death furnished by the plaintiff are competent evidence in behalf of the defendant, and it is error for the court to reject them." (Syl. ¶ 3.)

See, also, *National Reserve Life Ins. Co., v. Jeffries,* 147 Kan. 16, 75 P. 2d 302, a comparatively recent decision of this court, which holds:

"Statements contained in an affidavit of proof of death, which is submitted by a beneficiary to an insurance company as a basis for the collection of a claim on the policy, are competent evidence to show the existence of an ailment of the insured at the time of his application for insurance and that he had received treatment therefor. Such facts amount only to prima facie evidence of their truth, but if unrebutted or unexplained, or unqualified by other evidence tending to show that they are erroneous or untrue, they are binding and conclusive on the beneficiary or other claimant under the policy." (Syl. ¶ 3.)

Based on the foregoing authorities we are convinced the trial court erred in refusing to permit the appellant to introduce the letter, which as we have indicated is tantamount to a supplemental proof of loss, in evidence. As applied to the facts of the instant case the soundness of the general rule, and the reasons why appellee's claim that its rejection resulted in no substantial prejudice to the appellant cannot be upheld, are well illustrated. Appellant had the burden of proving the insured was injured while he was getting on or off

the elevator. It had been advised by appellee that tracks in the dust showed that he had left the elevator, walked over to the bin and was injured after he had returned to and while he was attempting to get upon such conveyance. Conceding that information was erroneous and susceptible of explanation the proof of loss was competent and should have been admitted at least for purposes of permitting the jury to determine the weight to be given the testimony of the witnesses who were actually present at the time the accident occurred if, in fact, they had changed their version of its cause and the insurer to show it had not arbitrarily disclaimed liability under the terms of the policy.

In view of the conclusion just announced the determination of divers other trial errors assigned by appellant as grounds for re-. versal of the judgment, many if not all of which will become unimportant on a new trial, do not require consideration in this opinion.

The judgment is reversed, solely upon the ground heretofore stated, with directions to grant a new trial.

WEDELL and PRICE, JJ., concur in the result but dissent from subdivision (1) and from subsections (c) and (d) of subdivision (2) of paragraph 11 of the syllabus and corresponding portions of the opinion.