No. 36,068

RANDOLPH LEONARD, *Appellee*, v. MARYLAND CASUALTY COMPANY, *Appellant*.

(146 P. 2d 378)

Opinion filed March 4, 1944.

*J. B. Patterson*, of Wichita, argued the cause, and *A. W. Hershberger, Enos E. Hook, R. E. Kirkpatrick* and *Richard Jones*, all of Wichita, were on the briefs for the appellant.

*Edward Wahl*, of Lyons, argued the cause for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by the insured under an automobile liability policy to recover attorneys' fees from the insurer. Plaintiff, Randolph Leonard, prevailed and the defendant, Maryland Casualty Company, appeals.

Appellant had refused to defend a wrongful death action brought by Maggie Garrett, widow of John W. Garrett, the deceased, against Leonard, the insured. That action grew out of an automobile collision between Leonard's car and the car of another party. John W. Garrett, the deceased, was alleged to have been making a trip with Leonard, and as Leonard's employee, at the time of the collision. Appellant refused to defend the wrongful death action against the insured on the ground the petition and the amended petition both affirmatively alleged the existence of a relationship of employee and employer between the deceased and the insured at the time of the collision resulting in Garrett's death and that liability of appellant in an action growing out of the described relationship was expressly excluded from coverage by the insurance contract. The insured successfully defended the action and now sues to recover attorneys' fees incurred in its defense.

The question now is whether appellant was required to defend the former action. The answer, of course, requires that we determine the nature of the particular action which appellant was requested to defend and that we examine the terms of the insurance contract in order to ascertain whether the parties thereby agreed the insurer was not required to defend such an action.

The averments contained in the original and amended petitions relative to the relationship mentioned are identical and read:

"7. That John W. Garrett, prior to the accident hereinafter described, had been working for Ralph Leonard and Randolph Leonard and that on the day of the accident the harvesting operations which had been in progress were shut down due to weather conditions, but that John W. Garrett was staying at the Ralph Leonard home and was receiving his meals as a part of his wages, and that immediately prior to the time of the accident hereinafter set out

that John W. Garrett was employed by the defendant, Randolph Leonard, and was assisting in the harvesting of wheat belonging to Randolph Leonard and as such was the employee of Randolph Leonard.

"8. That on or about the afternoon of July 9, 1940, and while harvesting was held up on account of wet weather, the defendant, Randolph Leonard, asked John W. Garrett to go with him to assist in picking sandhill plums, and at the direction of Randolph Leonard said John W. Garrett did go with Randolph Leonard and did assist in picking a considerable quantity of sandhill plums and that while picking said plums John W. Garrett was the employee of said defendant and was acting by reason of his employment."

Pertinent paragraphs of the insurance policy provide:

"The Company shall

"(a) Defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false and fraudulent, but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company.

"EXCLUSIONS

"This policy does not apply

"(e) Under coverage A to body injury to or death of any employee of the insured while engaged in the business of the insured, other than domestic employment, or in the operation, maintenance or repair of the automobile, or to any obligation for which the insured may be held liable under any Workmen's Compensation law."

There can be no doubt the action, according to the averments of both petitions, clearly was grounded on the theory and contention the relation of employee and employer existed between the deceased and the insured at the time of the collision which resulted in Garrett's death. The terms of the policy in plain and unambiguous language expressly exclude liability of the insurer to the insured in an action such as that described in the portions of the petitions above quoted.

What is the test of the insurer's obligation to defend an action against the insured under these circumstances? In the case of *Fessenden School v. American Mut. &c. Ins. Co.*, 289 Mass. 124, 193 N. E. 558, involving the same inquiry, it was said:

"It is plain that the insurance company would not have been bound under its policy to indemnify the plaintiff if the plaintiff Ada Gauthier had recovered judgment *on her declaration* against The Fessenden School, Incorporated, as amended. We think the contention of the defendant is sound, that the obligation of the defendant insurance company is to be determined *by the allegations of the declaration,* and that it is not required to defend if it would not be held bound to indemnify the defendant in the action if the plaintiff prevailed upon the *allegations of the declaration.* [Italics ours.] *Ocean Accident*

*& Guarantee Corp., Ltd., of London,* v. *Washington Brick & Terra Cotta Co.,* 148 Va. 829; *Fulton Co. v. Massachusetts Bonding & Ins. Co.,* 138 Tenn. 278. *Bloom-Rosenblum-Kline Co. v. Union Indemnity Co.,* 121 Ohio St. 220. *United States Fidelity & Guaranty Co. v. Yazoo Cooperage Co.,* 157 Miss. 27. *United States Fidelity & Guaranty Co. v. Baldwin Motor Co.,* 34 S. W. 2d (Tex.) 815. *Fidelity & Casualty Co. of New York v. Stewart Dry Goods Co.,* 208 Ky. 429." (pp. 130, 131.)

A few of the many other authorities to the same effect are *Brodek v. Indemnity Ins. Co.,* 292 Ill. App. 363, 11 N. E. 2d 228 (1937) and numerous cases from other jurisdictions therein cited; *Cas. Ins. Co. v. Tri-State Tr. Co.,* 190 Miss. 560, 1 So. 2d 221, 133 A. L. R. 1510 and anno. p. 1516 (1941); *Maryland Casualty Co. v. Moritz,* (Tex. Civ. App.) 138 S. W. 2d 1095 (1940); *United Waste Mfg. Co., v. Maryland Casualty Co.,* 148 N. Y. Supp. 852, (affirmed 169 App. Div. 906, 153 N. Y. Supp. 1148, without opinion); *London Guarantee & Accident Co. v. Shafer,* 32 F. Supp. 905; 35 F. Supp. 647 (1940); *American Fidelity Co. v. Deerfield Valley Grain Co.,* 43 F. Supp. 841 (1942); 5 Couch on Insurance, § 1175e, p. 4189; 8 Appleman's Insurance Law and Practice, § 4683, pp. 8, 9.

In the Mississippi case, *supra,* the sole question on appeal was whether the insurance company was required to defend under its policy, and it was determined the test did not consist in the proof adduced at the trial, but that the duty to defend was measured by the allegations of the declaration in the action against the insured. To the same effect is the Texas case, *supra.* In *London Guarantee & Accident Co. v. Shafer,* supra, it was said:

"A liability insurer's obligation to defend action against insured is to be determined when action is brought, and not by outcome of action." (35 F. Supp. 647, headnote 2.)

To the same effect are the above citations from Couch's Cyclopedia on Insurance Law and Appleman's Insurance Law and Practice.

The decisions heretofore cited are in harmony with our pronouncement in *El Dorado Refining Co. v. United States Fidelity & G. Co.,* 157 Kan. 198, 139 P. 2d 369, where the allegations of the petition in an action against the insured were analyzed with a view of determining the duty of the insurer to defend under its policy, and we said:

"A similar contention was considered at length in the case of *Brodek v. Indemnity Ins. Co.,* 292 Ill. App. 363, 384-387, 11 N. E. 2d 228, which involved facts and circumstances closely similar to those here presented and it was

there said that the policy was not 'intended to bind the insurer to take charge of and defend a suit in which, under the terms of the policy, it had no interest.' " (p. 202.)

From these decisions, constituting the great weight of authority, the duty of an insurer under an automobile liability policy to defend an action for damages against its insured is not measured by the proof which may be adduced at the trial nor by the outcome of the litigation, but by the allegations of the petition or complaint in the action and by the terms and provisions of the insurance contract. If the rule were otherwise an insurer would be obligated to defend every type and character of action instituted against every insured although the basis or ground of such action was wholly outside the coverage of the policy. Such a conclusion would render the exclusion clause a complete nullity and would therefore result in making a new contract for the parties which, of course, we are not at liberty to do.

In the instant case the trial court agreed appellant had no duty to defend under the allegations of the original petition, but held that such duty arose under the averments of the amended petition. Its theory was the amended petition enlarged the issues by alleging gross and wanton negligence on the part of the insured instead of simple negligence pleaded in the original petition and hence the amended petition made Leonard (the insured) liable to plaintiff under our "guest statute."

It had been held that where an action of an injured person is based upon various grounds which are not within the terms of the policy, and on another which is within its terms, the situation does not justify an insurance company in declining to defend. (*Christian v. Royal Insurance Co.*, 185 Minn. 180, 240 N. W. 365, *Maryland Casualty Co. v. Moritz,* supra.) With those decisions we agree. In a careful review of the authorities in the Illinois case, *supra,* it was said:

"Among the numerous cases cited by plaintiff to substantiate his position that the indemnity company was required, under paragraph 3, to defend all suits, whether 'groundless, false or fraudulent,' we find none imposing upon an insurer the duty to defend a suit which is not covered by the indemnity provisions of the policy. Most of the decisions cited are cases in which the suits filed against the various assureds specify as one ground of damage a type of liability covered by the policy. Several of the cases involved situations in which several bases of liability were asserted, some of which fell within the coverage provisions of the policies and others of which did not." (p. 383.)

Did the allegations of the amended petition in the wrongful death action bring that case under our "guest statute"? Appellant insists they did not. It points out, as previously shown, that the amended petition contained allegations identical with those in the original petition relative to the relationship of employee and employer, between the deceased and the insured. Appellant therefore contends there was no fundamental change in the cause of action, the only change being that the amended petition alleged gross and wanton negligence on the part of the insured at the time the deceased was acting in the capacity of an employee to the insured, while the original petition alleged only simple negligence under the same identical relationship. We think the contention is sound. It is true the amended petition laid the basis for recovery of exemplary or punitive damages but clearly it did not bring the case under our "guest statute." It may be worth observing the amended petition was not framed in separate counts in which the relationship of·employee and employer was pleaded in one count and the guest relationship was pleaded in the other. Furthermore, the single count in which both petitions were framed affirmatively and expressly alleged the existence of a definite relationship between the parties which clearly took the case entirely out of our statute commonly called the "guest statute." That statute, G. S. 1935, 8-122b, provides:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

From the amended petition it affirmatively appears the deceased was not being transported by the insured without consideration to the insured but that, on the contrary, definite and direct consideration passed to the insured for such transportation. That petition clearly discloses the deceased was making the trip to pick plums for the insured, at the request or direction of the insured, and for the express and direct benefit of the insured. That petition alleged: "While picking said plums John W. Garrett was the employee of said defendant and was acting by reason of his employment." That petition also, in substance, further disclosed the deceased was staying at the home of Ralph Leonard and was there receiving his meals during his employment and as a part of his wages; that the accident occurred on the way back to the home of Ralph Leonard.

Manifestly, the deceased was not a guest within the contemplation of our "guest statute." In *Elliott v. Behner,* 146 Kan. 827, 73 P. 2d 1116, we held:

"Under a statute denying recovery for injuries sustained while one is being transported as a .guest without payment of fare, *held,* that where the driver receives a direct benefit from a third party, the transportation is not gratuitous and there is no guest relationship." (Syl. ¶ 3.)

In the opinion in the Elliott case we quoted, with approval, from the case of *McGuire v. Armstrong,* 268 Mich. 152, 255 N. W. 745. The pertinent portion of the quotation reads:

"The consideration need not pass from the passenger to the driver. If the driver receives a direct benefit from another, the service is not gratuitous and there is no guest relationship." (p. 156.)

It also will be observed the exclusion clause, previously quoted, is not modified so as to require the insurer to defend an action in which the employee charges his employer, the insured, with gross and wanton negligence. That clause relieves the insurer of the duty to defend *any* suit therein mentioned brought by the employee of the insured against the insured. As to such actions it is therefore wholly immaterial whether the negligence was gross and wanton insofar as the question of the insurer's duty to defend is concerned. It follows the allegations of the amended petition clearly brought the action within the exclusion clause and the insurer was not required to defend the action.

Appellee advances a new contention not made in the trial below. It involves the following portion of the exclusion clause of the policy, previously quoted, to wit: "This policy does not apply (e) Under coverage A to body injury to or death of any employee of the insured while engaged in the business of the insured . . ."

The policy stated, "The occupation of the named insured is School Teacher." Appellee emphasizes the words in the exclusion clause, to wit: ". . . while engaged in the business of the insured," and argues the insurer was not released from the duty to defend the wrongful death action because the deceased at the time of the collision was not an employee of the insured while the insured was engaged in the business of teaching. With that argument we cannot agree. Let us, however, briefly pursue the argument and see where, if sustained, it leads us relative to policies of this character. This is a liability policy on the automobile of the insured. Such a policy is designed to protect the insured against damage actions arising

out of the operation of his automobile. It is true the insured's regular and customary occupation was stated to be that of a school-teacher. His occupation might have been that of a lawyer, judge, preacher, farmer or any number of other occupations which might be mentioned. Can anyone seriously and logically contend an automobile liability policy gives an insured protection against a damage action only in the event the insured is making a trip involving a matter pertaining to his usual and customary occupation described in the policy? We do not think so. That is not the nature and character of an automobile liability policy.

Would anyone seriously argue that such a policy did not protect the insured against damages resulting from an automobile collision while the insured was making a business trip on some oil or farming venture in which he was engaged, simply because the policy stated his occupation to be that of lawyer or judge? We do not think so. By the same token appellee's contention is not sound as applied to an employee of the insured. Moreover, the exclusion clause does not limit or restrict its operation to an employee of the insured while engaged in the regular or customary occupation of the insured. The exclusion clause applies to an employee while engaged in the business of the insured. The business of the insured is not specified or restricted by the language of the policy. The insured may have any number of businesses outside of his regular and customary occupation. In a policy of this character we think the clause applies to any business in which the insured may be engaged.

In support of appellee's contention he cites the single case of *Sills v. Sorenson,* 192 Wash. 318, 73 P. 2d 798. In due deference to the majority view in that case this court is not persuaded by its logic and does not desire to follow it.

The judgment of the trial court is hereby reversed and judgment is rendered for appellant.

HARVEY, SMITH and PARKER, JJ., dissent.