No. 39,864

LAWRENCE L. MILLER, *Appellee*, v. FARMERS MUTUAL AUTOMOBILE
INSURANCE COMPANY, *Appellant*.

(292 P. 2d 711)

Opinion filed January 28, 1956.

*William E. Haney,* of Topeka, argued the cause, and *Howard A. Jones* and *Charles L. Davis, Jr.,* both of Topeka, were with him on the briefs for the appellant.

*William Hergenreter,* of Topeka, argued the cause, and *Wendell L. Garlinghouse, Warren W. Shaw, Robert R. Jones* and *John A. Baush,* all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action by an insured against an insurance company for a declaratory judgment to determine the rights and obligations of the parties under an automobile insurance policy.

From an adverse judgment defendant has appealed.

Plaintiff was the owner of a 1952 Pontiac automobile. The insurance policy in question was purchased by him from defendant and was in effect from February 20, 1953, to August 20, 1953. It was a "standard policy" classified as for "pleasure and business," and insured plaintiff against liability for bodily injury to the extent of $15,000 for each person, and against liability for property damage for each accident to the extent of $10,000. It provided that in the event plaintiff was sued as a result of a collision involving his automobile, or one being driven by him, defendant company would defend such suit.

With respect to coverage while driving a vehicle other than the described Pontiac the policy provided:

"V. Use of Other Automobiles

"If the named insured is an individual who owns the automobile classified 'pleasure and business,' . . . such insurance as is afforded by this policy for bodily injury liability, for property damage liability . . . with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

"(a) With respect to the insurance . . . the unqualified word 'insured' includes (1) such named insured, . . ."

"(b) This insuring agreement does not apply:

"(1) To any automobile . . . furnished for regular use to the named insured . . .

"(2) To any automobile while used in the business or occupation of the named insured . . . except a private passenger automobile operated or occupied by such named insured, . . ."

On April 17, 1953, while driving a 1951 Chevrolet vehicle, commonly known as a "carry-all," and which was owned by the adjutant

general's department of the state of Kansas, plaintiff was involved in a collision with a vehicle owned by one D and being driven by D's wife. As a result of this mishap D sued plaintiff to recover for damage to his vehicle in the amount of $500, and D's wife sued plaintiff to recover for her personal injuries in the sum of $5,585.

Plaintiff notified defendant insurance company of these actions filed against him, but the company, after making an investigation under a reservation of rights, refused to defend the suits for the asserted reasons that (1) at the time of the collision in question plaintiff was driving a vehicle which was furnished for his regular use by his employer, and (2) that the vehicle being driven by plaintiff at the time in question was other than a private passenger automobile used in the business or occupation of plaintiff, and therefore the exclusionary provisions of the policy, *supra*, relating to the use of other automobiles, applied, thus relieving defendant company of all obligation to defend the actions.

Because of this dispute between the parties as to their respective rights and obligations under the policy plaintiff filed this action for a declaratory judgment.

The pleadings raised only two questions. The first was whether the Chevrolet vehicle which plaintiff was driving at the time of the collision was one "furnished for regular use" to him. The second was whether the vehicle was other than "a private passenger automobile."

The trial court, after hearing considerable evidence, made findings of fact on the two questions as follow:

"9. That the 1951 Chevrolet automobile being driven by the plaintiff on April 17, 1953 was furnished to the plaintiff by the employer of plaintiff, the Adjutant General of the State of Kansas. That plaintiff used said automobile very seldom, probably not more than 2 or 3 times a year and then only for short trips. That said automobile was not furnished to the plaintiff 'for regular use.'

"10. That the 1951 Chevrolet automobile was called a 'carry-all' by the manufacturer, which is similar to the type generally called 'station wagon.' That the automobile in question at the time of the accident, before and since has only been used to transport one to seven human beings. That said automobile was and is a private passenger automobile."

As a conclusion of law the court held:

"1. That the defendant, Farmers Mutual Automobile Insurance Company was obligated under its policy No. 15-021851 to provide the protection to the plaintiff up to the limits set out in the policy declarations for the accident in which the plaintiff was involved on April 17, 1953 while the plaintiff was driving the 1951 Chevrolet described in plaintiff's petition, . . ."

Judgment was entered accordingly and defendant has appealed, specifying as error the findings quoted above, the conclusion of law, the rendition of judgment thereon, and the denial of its motion for a new trial.

Concerning the question whether the Chevrolet vehicle which plaintiff was driving at the time of the collision was one "furnished for regular use" to him, the evidence disclosed the following:

Plaintiff had been employed as a civilian employee of the adjutant general's department of Kansas for several years. He was a contracting and purchasing clerk and bought items and supplies for the arsenal located on south Topeka Avenue in Topeka. The major portion of his duties was performed at his desk at the arsenal. His work required him to leave the arsenal very little, but occasionally he would drive from the arsenal to some store in downtown Topeka, and on rare occasions he would drive outside of Topeka. There were thirty or thirty-five employees in plaintiff's office, and a "car pool," consisting of four vehicles, including the Chevrolet in question, was available for use by the employees. These vehicles were owned by the adjutant general's department. The vehicle in question was purchased in 1951, and between then and April 17, 1953, the date of the accident, plaintiff had driven it perhaps four or five times. During the six months following the accident he had driven it approximately five or six times. He and his immediate superior testified that this vehicle was not furnished for his regular use, and that, provided it was not being used by some other employee, it was merely available to him on the very infrequent occasions he had to use a government-owned vehicle in his work. On many occasions, when no vehicle in the "car pool" was available he used his own automobile.

Upon this evidence, of which the foregoing is only a brief résumé, the trial court found that the vehicle in question was not furnished to plaintiff for his regular use within the meaning of the exclusionary provision of the policy.

The evidence concerning whether the vehicle in question was other than "a private passenger automobile" disclosed the following:

It is referred to in the "trade" and by the manufacturer as a "carry-all," and is described as being identical to what is commonly known as a "station wagon," except that it lacks many of the "refinements" of the latter. It has the same engine and mechanism as a comparable "station wagon," has two doors, a front seat, middle

seat and rear seat. It always had been used to carry persons, not exceeding seven in number.

Upon this evidence, of which the foregoing is merely a brief summary, the trial court found that the vehicle was a private passenger automobile within the meaning of the exclusionary provision of the policy, and not a "truck," as contended by defendant.

We think there can be no question but that the findings by the trial court on these two controverted issues are amply supported by substantial competent evidence. Such being the case, under the well-established rule, they are not to be disturbed on appellate review. And, if the findings are to be upheld, the conclusion of law made by the court is of a certainty correct and judgment was properly rendered thereon.

However, as the precise questions apparently have never been passed upon by this court, we pause briefly to comment on defendant's contentions. In support of them we are cited to a number of decisions from other jurisdictions in which "use of other automobile" provisions in insurance policies are discussed. Each has been examined and considered. A number of them are set out in the annotation found at 173 A. L. R. 901. A study of the authorities discloses that courts have found it difficult to lay down any hard and fast rule, and that, generally speaking, each case has been decided upon its own facts and circumstances. As a matter of practical everyday experience, the average person occasionally drives an automobile other than his own. The purpose and effect of the "use of other automobile" provision in a policy are obvious. It extends the driver's insurance to infrequent or casual driving of other automobiles, but excludes him from coverage with respect to his regular use of an automobile not covered by the policy. And, with respect to the requirement that the "other automobile" be a private passenger automobile, the reason is equally obvious. It is common knowledge that the ordinary risk is greatly increased when an insured is driving a truck, bus, delivery, freight or cargo-hauling vehicle.

We agree with the trial court that under the facts of this case the use which plaintiff made of the vehicle in question clearly was so infrequent and casual that it is not to be considered as one furnished to him for his regular use within the meaning of the policy, and that it was not intended for and in fact was not used for any purpose other than transporting not to exceed seven passengers. It clearly

was a private passenger automobile within the meaning of the policy.

Defendant inferentially contends that inasmuch as the vehicle in question was government-owned it therefore was not a "private" passenger automobile. This contention cannot be sustained. The test to be applied to the word "private" is the type of vehicle and not its ownership.

And there is still another reason why we think this case was correctly decided in the court below. Assuming, for the sake of argument, there is some ambiguity or uncertainty in the language of the exclusionary provision in question, defendant company is bound by the universal rule to the effect that where a provision of an insurance policy is susceptible of different constructions it is to be construed most favorably to the insured, and that if the insurer intends to restrict its coverage it should use language clearly stating its purpose. (*Evans v. Accident Association*, 102 Kan. 556, 171 Pac. 643, L. R. A. 1918D 122; *Sebal v. Columbian Nat. Life Ins. Co.*, 144 Kan. 266, 58 P. 2d 1108; *Knouse v. Equitable Life Ins. Co.*, 163 Kan. 213, 181 P. 2d 310; and *Smith v. Mutual Benefit Health & Acc. Ass'n*, 175 Kan. 68, 258 P. 2d 993.)

The judgment is affirmed.