320 F.2d 24
 D. S. DONLEY, Appellant,
v.
La Verne H. CHRISTOPHER, Executrix of the Estate of H. Ward
Christopher, E. Alex Phillips, Joseph A. Phillips,
Kenneth P. Milliken and Sylvia Milliken
Blair, Appellees.
M. Eugene DONLEY and Bessie E. Donley, Appellants,
v.
La Verne H. CHRISTOPHER, Executrix of the Estate of H. Ward
Christopher, E. Alex Phillips, Joseph A. Phillips,
Kenneth P. Milliken, and Sylvia Milliken
Blair, Appellees.
Neil VANN, Appellant,
v.
La Verne H. CHRISTOPHER, Executrix of the Estate of H. Ward
Christopher, Joseph A. Phillips, Kenneth P.
Milliken and Sylvia Milliken Blair, Appellees.
 Nos. 7144-7146.
 United States Court of Appeals Tenth Circuit.
 July 16, 1963.
 
 Fred R. Vieux, Augusta, Kan., for appellants.
 Laverne Morin, Wichita, Kan. (Charles H. Haden, Charles H. Haden, II, Morgantown, W. Va., George B. Collins, Oliver H. Hughes, Robert Martin, K. W. Pringle, Jr., W. F. Schell, Robert M. Collins, William L. Oliver, Jr., and Thomas M. Burns, Wichita, Kan., were with him on the brief), for appellees.
 Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.
 BRATTON, Circuit Judge.
 
 
 1
 These are three conventional pollution cases to recover damages to land, livestock, and poultry arising out of failure to confine salt water and oil having their source in the operation of oil wells in the Oxford Oil Pool in Sumner County, Kansas. Recoupment of outlays for certain expenses and recovery of punitive damages were also sought. D. S. Donley instituted one of the actions; M. Eugene Donley and Bessie E. Donley instituted one; and Neil Vann instituted one. La Verne H. Christopher and others were defendants. The defendants denied the alleged pollutive action on their part; pleaded that if pollution existed with damaging results to plaintiffs it was caused by persons other than the defendants; pleaded the statute of limitations; and pleaded failure of plaintiffs to mitigate their damages. The cases were consolidated for trial; were tried to a jury; a verdict for the defendants was returned in each case; judgment was entered for the defendants in each case. An appeal was perfected in each case; the cases were brought here on a single record; and were bridfed and argued together.
 
 
 2
 The action of the court in admitting in evidence a certain map is challenged. The pretrial order contained a provision that exhibits not offered at the conference or made available to opposing counsel within ten days prior to the trial would not be received in evidence, except by proper rebuttal, by consent of all parties, by order of the court, or to prevent manifest injustice. The map was not offered at the pretrial conference, but it was made available to the attorney for plaintiffs and an effort was exerted to have him examine it approximately three weeks prior to the trial. That constituted compliance with the pretrial order.
 
 
 3
 The action of the court in admitting the map in evidence is challenged on the further ground that it contained notes and data highly prejudicial to plaintiffs without any basis therefor being shown in the evidence. The map was prepared by a consulting engineer or under his direction for use in the trial of the cases and it was offered in evidence in connection with the testimony being given by him. It disclosed the Oxford Pool, the location of wells therein, the location of the premises owned by plaintiff D. S. Donley, and the location of the premises owned by plaintiffs m. eugene Donley and Bessie E. Donley. The witness testified that in 1927 he became an oil field hand in the Winfield Pool about ten miles from the Oxford Pool; that he was seventeen years of age at the time; that during the intervening years he became familiar with the practices prevailing in the particular area involved in this litigation relating to the drilling and plugging of wells; that he had examined the abandonment and plugging records in the offices of the Corporation Commission of Kansas; that dots on the map with red circles around them represented wells drilled and plugged prior to the beginning of 1938; that dots with oblique lines drawn through them represented wells which were abandoned and plugged after 1938; and that dots without circles or lines represented wells then presently producing. He further testified that his check of the records together with his own background experience led him to the conclusion that the wells plugged prior to 1938 were inadequately and poorly plugged. He further testified in summary the substance of the official records in respect to the manner in which a well referred to as the Sheeks well had been plugged; and he stated the substance of the official records in respect to the manner in which one well had been plugged, and the flow of salt water therefrom afterwards. A marginal note in pencil stated in substance that the map disclosed seven wells showing salt water visibly at the surface; twenty-four wells which the official records revealed inadequate plugging procedures similar to that at the Sheeks well; three wells inadequately plugged but better than the Sheeks well; and forty-five wells plugged prior to 1936. Numerous objections were interposed to the admission of the map, the substance of which was that no showing had been made of relationship between the early wells and the damage to plaintiffs; and that the map was incompetent unless and until it was shown that wells other then those of the defendants were polluting the under-flow. The map was admissible as preliminary background material for the purpose of depicting in graphic form the testimony relating to the records in the office of the Corporation Commission and in appraising the expert testimony respecting the source of the oil and salt water which produced the polluting effect resulting in damage to the plaintiffs. Cf. National Alfalfa Dehydrating & Milling Co. v. Sorensen, 8 Cir., 220 F.2d 858.
 
 
 4
 Complaint is made that original records of the Corporation Commission-- including correspondence-- were produced in court and made available for use of the parties. The argument is that the records were not officially certified or verified in respect to authenticity. The records were produced in response to a suggestion of the attorney for plaintiffs that he desired them for use in cross-examination. When they were produced, no objection was made respecting the absence of a certificate of authenticity or verification. And there is no suggestion now that they did not come from the offices of the Corporation Commission. Having failed to object to the records at the time of their production and tender, the contention at this belated juncture comes too late.
 
 
 5
 One further contention merits consideration. It is that the court erroneously permitted the introduction of evidence relating to custom and usage in the handling of salt water in wells drilled as far back as 1927 without any showing that such wells actually leaked saly water which contributed to the damage of plaintiffs. The primary issue of fact on which the cases turned was the source of the salt water and oil which caused pollution with damaging effect to plaintiffs. That issue was controverted throughout the trial. The theory of plaintiffs was that under-flow of salt water and oil from the wells of the defendants was the source of the pollution. The theory of defendants was that the source of the under-flow was wells of others. The evidence of custom and usage in respect to the handling of salt water and oil as far back as 1927 was admissible as circumstances tending to throw light upon the source from which the damaging under-flow came. The length of time intervening between the time of the custom and usage in the earlier years and the damage suffered by plaintiffs went to the weight of the evidence, not its admissibility.
 
 
 6
 The judgments are severally.
 
 
 7
 Affirmed.