338 F.2d 35
 Kenneth P. MILLIKEN, Kenneth P. Milliken and Sylvia Milliken Blair, Executors of the Estate of Hiram Edison Milliken, a/k/a H. E. Milliken, deceased; and La Verne H. Christopher, Executrix of the Estate of H. Ward Christopher, deceased, Appellants,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, a corporation, Appellee.
 No. 7673.
 United States Court of Appeals Tenth Circuit.
 November 10, 1964.
 Rehearing Denied December 7, 1964.
 
 Robert B. Martin, Wichita, Kan. (Charles H. Haden, Charles H. Haden, II, Morgantown, W. Va., George B. Collins, Oliver H. Hughes, K. W. Pringle, Jr., W. F. Schell, Robert M. Collins, William L. Oliver, Jr., William V. Crank, Tom C. Triplett, Wichita, Kan., Thomas M. Burns, Denver, Colo., and Laverne Morin, Wichita, Kan., on the brief), for appellants.
 William Tinker, Wichita, Kan. (Arthur W. Skaer, Jr., Hugh P. Quinn, Alvin D. Herrington, Richard T. Foster, Lee H. Woodard and William A. Hensley, Wichita, Kan., on the brief), for appellee.
 Before BREITENSTEIN, HILL and SETH, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This diversity action was commenced in the court below by appellants to recover from appellee the costs and expenses which they incurred in defending three lawsuits brought against them for damages alleged to have been caused by pollution, i. e., the escape of salt water and oil from appellants' oil and gas operations. The basis upon which appellants seek to recover is that appellee had a duty to defend the three lawsuits under the terms of a policy of insurance issued by it to them and, having refused to fulfill that duty, it is liable for the amounts expended by appellants for that purpose. The trial court resolved all disputed questions of fact and law in favor of appellee and this appeal resulted.
 
 
 2
 The undisputed facts are that in 1954, appellants became the owners of a number of oil and gas leases located in the vicinity of Oxford, Kansas. On November 1, 1957, appellee issued the insurance policy in question to appellants, which policy was admittedly in full force and effect at all material times. By the terms of the policy, appellee agreed to "pay on behalf of the insured [appellants] all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident" and it agreed to defend any suit brought against the insureds to recover damages for injuries covered by the policy, even though such suit might be groundless, false or fraudulent.[1] The policy also provided for the exclusion from coverage of any injury to, or destruction of, "underground property" which is defined therein as "* * oil, gas, water or other mineral substances * * * which * * * has not been reduced to physical possession above the earth's surface * * *."[2]
 
 
 3
 On March 2, 1960, appellant Milliken was notified that one D. Donley had instituted an action in the state district court to recover for damages caused to his land, livestock and poultry by the alleged pollution. The petition in that case contained four causes of action and it was alleged that during the spring months of 1958 the pollution saturated the subsurface of Donley's property; that appellants permitted the escape of such pollution from oil wells, sludge pits, disposal wells and oxidation ponds; and that all of Donley's loss and damage was the direct and proximate result of appellants' permissive, intentional and wilfull conduct in permitting the escape of such pollution. Appellee was notified of the commencement of the action and a copy of the petition was transmitted to it. Appellee denied that it was obligated to pay any judgment that might be obtained against appellants and refused to defend the suit on the ground that the allegations of the petition did not fall within the policy coverage. Appellants then retained counsel to represent them and the action was removed to federal court.
 
 
 4
 On April 13, 1960, the other two pollution cases were filed in the court below and each of the complaints contained allegations similar to those in the prior suit. Appellants' counsel promptly notified appellee of the commencement of these suits and forwarded copies of the complaints to it. Appellee refused to defend these suits for the same reasons given in the prior case. Thereafter, amended complaints were filed by the plaintiffs in each of the three cases and appellee was duly notified of this fact. Copies of the amended complaints were transmitted to appellee and, again, it refused to defend the 3 suits. The cases were consolidated for a jury trial and resulted in verdicts in favor of appellants. Upon appeal, this court affirmed the judgments. Donley v. Christopher, 10 Cir., 320 F.2d 24. Appellants then made demand upon appellee to pay the costs and expenses they had incurred and, when that demand was refused, they commenced this action.
 
 
 5
 The evidence in the record shows without dispute that in each instance appellee refused to defend the pollution cases without making an investigation of any kind as to either the basis of the claims being asserted against appellants or the underlying facts relied upon by the pollution plaintiffs to sustain those claims. Appellee relied solely and exclusively upon the allegations of the initial state court petition and the subsequent federal court complaints and amended complaints. The refusal to defend was based upon the following grounds: The pollution suits involved an occurrence and not an "accident" within the terms of the policy; the suits related to recovery for damage to "underground property" which was specifically excluded from coverage; the suits were for the recovery of damages caused by intentional acts and not an accident; and injunctive relief was also sought in the suits thereby establishing that the suits were brought to prevent recurring conduct as distinguished from an accident.[3] It may fairly be stated that the pleadings in the pollution cases do, indeed, allege injuries and damages which would not be included in the coverage afforded by the policy. And, clearly while those pleadings were transmitted to appellee, no reference was made to the factual situation which developed at the trial of the cases and upon which appellants now rely to bring the cases within the coverage of the policy and, hence, within appellee's duty to defend.
 
 
 6
 However, the evidence also shows without dispute that the alleged pollution consisted of the escape of salt water from appellants' salt water disposal system on only two occasions. The first instance occurred when the automatic float on the salt water disposal tank became corroded and stuck so that the tank could not drain. As a result, the level of salt water in the tank rose to such an extent that the action of the wind caused approximately 10 to 50 barrels of salt water to escape over the sides of the tank each day. This situation was promptly corrected. The second occasion was when a drain plug on the salt water disposal tank, together with other plugs in the transit salt water line, fell out or became unplugged and thus permitted salt water to escape. The encrustations caused by the escape of the salt water were visible and could be seen in aerial photographs introduced as exhibits in the cases. In connection with these two instances, appellee's claims attorney, who made the decision not to defend the suits, testified that the first incident would be an "accident" within the terms of the policy and the second would be an "unusual and unexpected" event or an accident.[4] This case therefore presents a situation in which there is a conflict between the allegations of the pleadings and the actual facts that were established at the trial of the cases. Under the allegations of the pleadings, appellee had no duty to defend but, under the actual facts, it did have a duty to defend the suits against its insureds. The crucial issue then is whether appellee was entitled to rely solely and exclusively upon the allegations of the pleadings in making the decision not to defend its insureds.
 
 
 7
 The issue was resolved by the court below in appellee's favor. To sustain the trial court's decision, appellee argues that state law is controlling in this diversity case under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and under Kansas law the duty of an insurer to defend an action against its insured is not measured by the proof adduced at the trial or by the outcome of the litigation, but by the allegations of the petition or complaint in the action and by the terms and provisions of the policy of insurance. This is, indeed, the rule in Kansas[5] but we think that the cases in which it was applied are clearly distinguishable from this case on both factual and procedural grounds. In each of those cases, the lawsuit that the insurer refused to defend was filed and tried in the state court under the state procedure whereas in the case at bar the original lawsuit, although filed in state court, was removed to federal court and, together with the other two pollution cases, was tried in federal court under federal procedure. The importance of this factual distinction lies in the fundamental difference between state and federal procedure.
 
 
 8
 The Kansas practice and procedure, at the time in question, required the pleading of facts to support the cause of action asserted.[6] Such is not the case in federal court. The Supreme Court has said that the Federal Rules of Civil Procedure permit "notice pleading" and the Rules "* * * do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is `a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. * * * Such simplified `notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. * * *"[7] It is therefore apparent that the underlying reason or basis for the Kansas rule on the duty to defend, i. e., the necessity of pleading facts, is not present when the action is brought in federal court. The Supreme Court of Kansas has not had occasion to rule upon the problem presented where the action that the insurer refused to defend was filed and tried in federal court.
 
 
 9
 This court has consistently held that as a general rule the duty of an insurer to defend its insured in federal court litigation is determined in the beginning of the litigation by the coverage afforded by the policy, as compared with the allegations of the complaint filed in the action.[8] But, the allegations of the complaint are not conclusive on the issue. The duty to defend may attach at some later stage of the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage.[9] The reason for this rule is that "* * * [u]nder the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties. * * *"[10] Thus, the insurer's duty to defend an action brought in federal court against its insured may arise or attach at any stage in the litigation. And the duty does attach where there are facts, extraneous to the allegations of the pleadings, which, if proved, make out a case against the insurer that is covered by the policy and which either are actually brought to the insurer's attention[11] or could have been discovered by it through a reasonable investigation.[12]
 
 
 10
 Here there were facts extraneous to the allegations of the pleadings which could make out a case against the insureds that would be covered by the policy. These facts could have been discovered by appellee if it had made a reasonable investigation. Appellee's duty to defend must be determined in the light of those facts and, when so considered, we conclude that appellee had a duty to defend its insureds against the claims asserted in the pollution cases. Having failed to defend its insureds, appellee is liable for the costs and expenses they incurred unless, as it contends, the underground property exclusion is applicable.
 
 
 11
 The law places upon the insurer the burden of proving facts that bring the case within the exclusionary clause of an insurance policy.[13] Appellee has not met that burden in this case. To the contrary, its claims attorney testified that the exclusion would not apply to the actual facts of the case as they now appear. We therefore hold that the provision of the policy excluding underground property damage is not applicable and cannot be used as a basis for appellee's refusal to defend its insureds.
 
 
 12
 Appellants seek to recover a reasonable attorney's fee for the prosecution of the instant action under the provisions of Kan.G.S.1961 Supp., 40-256. But, the Supreme Court of Kansas has held that a reasonable attorney's fee may be allowed under that statute only where the insurer has refused without just cause or excuse to pay its insured in accordance with the terms of the policy.[14] The question of whether an insurer's refusal to pay is without just cause or excuse is necessarily one of fact and since the lower court did not reach the issue, it made no findings of fact in that respect. On the present state of the record, we cannot determine the issue because "* * * we cannot say that the facts are either clear or undisputed. * *"[15]
 
 
 13
 The judgment is reversed and the case is remanded with directions to enter judgment in favor of appellants for the stipulated amount of the costs and expenses they incurred in defending the pollution suits and to make findings of fact and conclusions of law and determine whether appellants are entitled to a reasonable attorney's fee.
 
 
 
 Notes:
 
 
 [1]
 That provision reads as follows:
 "With respect to such insurance as is afforded by this policy, the company shall:
 "(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *"
 
 
 [2]
 The full provision reads as follows:
 "The term `underground property', as used in this endorsement, means oil, gas, water or other mineral substances, including any title, interest or estate therein, which, at the time of the act or omission causing loss of, injury to or destruction of such substance, or loss, impairment, or reduction of the value of such title, interest or estate, has not been reduced to physical possession above the earth's surface; such term also includes any well, hole, formation, strata or area beneath the surface of the earth in or through which exploration for or production of any such substance is carried on, or any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment which is located in any such well or hole beneath the earth's surface at the time of the accident causing injury or destruction."
 
 
 [3]
 The parties have stipulated that none of the costs and expenses incurred in the defense of the suits is attributable to the requests for injunctive relief and punitive damages. They have also stipulated that the costs and expenses incurred amount to $26,750.72; that if the underground exclusion is applicable, the amount of $5,955.02 is attributable to that aspect of the cases; and that a reasonable attorney's fee for the prosecution of this case is $3,250, if appellants are entitled to same
 
 
 [4]
 His testimony in this respect is as follows:
 "Q. If the cause of the escape of the salt water was the fact that the automatic float at the salt water disposal tank stuck, would this be an accident within the terminology of the insuring agreements of the policy?
 "A. If that was the fact and it was ascertainable as to the date or time, yes, it would be.
 "Q. Assume further that if the evidence is that it was stuck on May 26 and May 27, 1958.
 "A. It would be an accident.
 "Q. Now Mr. Wood, one would not normally expect a drain plug on a salt, concrete salt water disposal tank to be out on a particular day?
 "A. I suppose not.
 "Q. In other words, you wouldn't expect that in the normal course of operation?
 "A. I wouldn't.
 "Q. And neither would you expect plugs in your transit line or your concrete salt water disposal line to be out on a particular day?
 "A. No, I would not expect them to be out.
 "Q. These would be unusual and unexpected events?
 "A. Yes, sir.
 "Q. Despite the fact that you had received or had before you the entire file, with only five complaints, you still elected to make no investigation of this claim?
 "A. We didn't make any investigation.
 "Q. You never reconsidered or never reopened the case or never even considered reopening?
 "A. We never, we really never made any investigation."
 
 
 [5]
 Henry v. Johnson, 191 Kan. 369, 381 P.2d 538; Hoffine v. Standard Accident Insurance Company, 191 Kan. 63, 379 P.2d 246; Leonard v. Maryland Casualty Co., 158 Kan. 263, 146 P.2d 378
 
 
 [6]
 Kan. G.S.1949, §§ 60-701, 60-704; Reilly v. Highman, 185 Kan. 537, 345 P.2d 652; Mathews v. Cook, 170 Kan. 462, 226 P. 2d 849; McKeever v. Buker, 80 Kan. 201, 101 P. 991
 
 
 [7]
 Conley v. Gibson, 355 U.S. 41, 47, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80. And, see United States v. Missouri-Kansas-Texas Railroad Co., 10 Cir., 273 F.2d 474
 
 
 [8]
 Pendleton v. Pan American Fire and Casualty Company, 10 Cir., 317 F.2d 96, cert. denied, 375 U.S. 905, 84 S.Ct. 196, 11 L.Ed.2d 145; Harbin v. Assurance Company of America, 10 Cir., 308 F.2d 748; American Motorists Ins. Co. v. Southwestern Greyhound Lines, 10 Cir., 283 F.2d 648; Albuquerque Gravel Products Co. v. American Employers Insurance Co., 10 Cir., 282 F.2d 218
 
 
 [9]
 Pendleton v. Pan American Fire and Casualty Company, supra; Harbin v. Assurance Company of America, supra
 
 
 [10]
 Harbin v. Assurance Company of America, supra, 308 F.2d at 750
 
 
 [11]
 American Motorists Ins. Co. v. Southwestern Greyhound Lines, supra; Albuquerque Gravel Products Co. v. American Employers Insurance Co., supra; Hardware Mutual Casualty Co. v. Hilderbrandt, 10 Cir., 119 F.2d 291; Hagen Supply Corp. v. Iowa National Mutual Insurance Co., 8 Cir., 331 F.2d 199, 204
 
 
 [12]
 American Motorists Ins. Co. v. Southwestern Greyhound Lines, supra
 
 
 [13]
 Beaver v. Fidelity Life Association, 10 Cir., 313 F.2d 111; Underwriters at Lloyds, London v. Cherokee Lab., Inc., 10 Cir., 288 F.2d 95. This is the rule in Kansas. Smith v. Allied Mutual Casualty Company, 184 Kan. 814, 339 P.2d 19; Braly v. Commercial Cas. Ins. Co., 170 Kan. 531, 227 P.2d 571; Lamb v. Liberty Life Ins. Co., 129 Kan. 234, 282 P. 699
 
 
 [14]
 Parker v. Continental Casualty Co., 191 Kan. 674, 383 P.2d 937; Lindesmith v. Republic Mutual Fire Ins. Co., 189 Kan. 201, 368 P.2d 35; Fleming v. National Cash Register Co., 188 Kan. 571, 363 P. 2d 432
 
 
 [15]
 Claybrook Drilling Company v. Divanco, Inc., 336 F.2d 697, 701 (10 Cir., 1964)