No. 45,931

TOMMY L. GOWING, *Appellant,* v. GREAT PLAINS MUTUAL INSURANCE COMPANY, INC., *Appellee.*

(483 P. 2d 1072)

Opinion filed April 10, 1971.

*John T. Flannagan,* of Payne & Jones, Chartered, of Olathe, argued the cause, and *Keith Martin,* of the same firm, was with him on the brief for the appellant.

*Edward B. Soule,* of Glenn, Cornish & Leuenberger, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, Tommy L. Gowing, seeks to recover attorney fees he incurred in defending an action brought against him for damages resulting from personal injury. Summary judgment was entered in favor of the defendant, Great Plains Mutual Insurance Company, Inc., and Gowing has appealed. The plaintiff will sometimes be referred to as Gowing, or insured, while the defendant will often be designated as Great Plains, or insurer.

The facts are not complicated. On December 14, 1965, an altercation took place between Gowing and a party by the name of Cawby on the latter's farm. Subsequently Cawby filed suit against Gowing for personal injuries allegedly sustained in the affray. In his petition, Mr. Cawby charged Mr. Gowing with an unprovoked, willful, malicious, vicious and violent assault and battery which was renewed after he, Cawby, had left his own land and was on his way to obtain medical attention. In response to Cawby's charges, Gowing pleaded self defense, and judgment in the assault and battery action was eventually entered in Gowing's favor.

Prior to the affray, Gowing had procured a policy of insurance with Great Plains, wherein that company agreed, in Section II thereof, "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, *even if any of the allegations of the suit are groundless, false or fraudulent* . . ." (Emphasis supplied.) Gowing has maintained throughout the course of this litigation that under this provision of the policy Great Plains was obligated to provide for his defense against the Cawby lawsuit.

On the other hand, Great Plains contends it had no duty to defend Gowing in the damage action because of an exclusionary provision reading as follows: "Section II of this Policy Does Not Apply: . . . to bodily injury or property damage *caused intentionally by or at the direction of the Insured* . . ." (Emphasis supplied.) The insurer has taken the position that Cawby's lawsuit charged Gowing with an intentional injury which was expressly excepted from the policy's coverage.

Three points are made by the plaintiff. We shall discuss but one of them, since in our view, it will control the disposition of this appeal. Slightly paraphrased, the decisive point raised by Gowing is this: The language of the policy with respect to the insurer's duty to defend is ambiguous; hence the policy should be strictly construed against the insurer; when so construed, the policy imposed an obligation on Great Plains to defend the personal injury action against Gowing.

In recent years, the so-called adhension contract has been the subject of much learned dissertation on the part of jurists and legal

savants. Typical of the adhesion contract, and one of its most prominent examples, is the insurance contract or policy, which possesses the distinctive characteristic of unequal bargaining strength or bargaining status between seller and purchaser, or the insurer and the insured. (See *Stewart v. Preferred Fire Ins. Co.*, 206 Kan. 247, 249, 477 P. 2d 966.)

The terms of today's standard insurance policy are predetermined by the insurance carrier itself and, long in advance of the individual insurance sale, those terms have been incorporated into the insurance package presented to the prospective buyer. The free give and take of the open market place does not prevail in the insurance industry. The buyer's freedom of choice in selecting a policy is severely limited; if he desires casualty insurance he must normally accept the printed policy with the usual printed provisions—else he can leave it.

Under such circumstances, concerning which we are not inclined to be critical, the law, in its concern for even-handed fairness, has attempted to minimize the imbalance between insurer and insured, so far as that is possible, by means of a rule that in the event of ambiguity or conflict in the policy provisions a policy of insurance is to be construed strictly against the insurer and in favor of the insured. The rule has been consistently applied in this jurisdiction for many years. (See cases compiled in 3 Hatcher's Kansas Digest [Rev. Ed.] Insurance, § 42.)

The premise on which this rule is based was given expression in *Gray v. Zurich Insurance Co.*, 65 C. 2d 263; 54 Cal. Rptr. 104, 419 P. 2d 168, where the facts were identical to those in this case, with the single exception that the action filed there against the insured had resulted in a judgment against him:

"Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect." (pp. 269, 270.)

This salutary principle pertains to the exclusionary provisions as well as to the other terms of the insurance contract. In *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 443 P. 2d 681, this court held that inasmuch as the insurer prepares the policy, the burden is upon him to establish facts which bring the case within the exceptions set forth in the policy. (See, also,

*Southards v. Central Plains Ins. Co.,* 201 Kan. 499, 441 P. 2d 808.)

In similar vein the federal court in *Prickett v. Hawkeye-Security Insurance Company,* 282 F. 2d 294, stated that if an insurer intends to restrict its coverage it must use language clearly stating its purpose and that this rule of construction applies with particular force to provisions which attempt to exclude liability coverage under certain conditions.

This court, also, has said that where an insurance company desires to limit its liability under a policy, it should employ such language as will clearly and distinctly reveal its stated purpose. (*Miller v. Farmers Mutual Automobile Ins. Co.,* 179 Kan. 50, 55, 292 P. 2d 711; *Chicago, R. I. & Pac. Rld. Co. v. Aetna Ins. Co.,* 180 Kan. 730, 737, 308 P. 2d 119.) Unclear and obscure clauses in a policy of insurance should not be permitted to defeat the coverage which is reasonably to be expected by the insured. (*Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 793, 457 P. 2d 34.)

Viewing the instant policy in the light of these time-tested principles, we cannot say that the extent of the obligation resting on Great Plains to defend its insured is wholly clear or free from doubt. The policy issued to Gowing is a "FARMOWNERS POLICY." It consists of two pages and is in substance what we assume might be termed a comprehensive policy, insuring Gowing's property against certain perils and Gowing himself against liability. The coverage with which we are here concerned is contained on page two, which is captioned FARMERS COMPREHENSIVE PERSONAL LIABILITY FORM. Under this caption there is the heading "INSURING AGREEMENTS" and immediately following is "Section I, Coverage G—Farmers Comprehensive Personal Liability", in black but smaller capital letters. Under this particular coverage the insurer makes two proposals: (1) To pay on behalf of the insured such sums as the insured shall legally become obligated to pay as damages for bodily injury or property damage and (2) to defend any lawsuit against the insured alleging such bodily injury or property damage and seeking damages payable under the terms of the policy, even if the allegations are groundless, false or fraudulent.

We believe the average man, in reading the foregoing provisions in their entirety, would conclude, and be fully justified in so doing, that he was buying a defense to whatever lawsuit might be filed against him seeking damages to person or to property. The language positioned at the top of the page is broad and sweeping in its scope.

It would tend to lead a reasonably naive insurance customer to expect that a defense would be provided against personal injury actions filed against him, whether the alleged injury be calculated or unintentional.

This court follows the general rule that in determining the intention of the parties to a contract of insurance, the test is not what the insurer intends the printed words of the policy to mean, but rather what a reasonable person placed in the position of the insured would have understood the words to mean. (*Casey v. Aetna Casualty & Surety Co.*, 205 Kan. 495, 499, 470 P. 2d 821; *Kansas Farm Bureau Ins. Co. v. Cool*, 205 Kan. 567, 572, 471 P. 2d 352, and cases cited therein.)

In contrast to the prominence accorded the insuring agreement found under Coverage G at the top of page two, the exclusionary clause on which the insurer relies is placed inconspicuously in a long paragraph near the bottom of the same page. Although the lengthy paragraph covers a number of exclusions as to coverage—both casualty and liability—they are strung together in continuous sequence without break, subparagraph or indentation. The exclusion is, in fact, not as readily apparent or as prominently placed as the insuring agreement. Hence we are not disposed to say that the insurer's grandly stated promise to defend is clearly and expressly limited to lawsuits based on unintentional torts.

Furthermore, it has been held that the exclusionary clause, itself, lacks clarity. In *Gray v. Zurich Insurance Co.*, supra, on which the plaintiff places great reliance, and whose rationale he urges us to adopt, the California court had this to say:

"A further uncertainty lurks in the exclusionary clause itself. It alludes to damage caused 'intentionally by or at the direction of the insured.' Yet an act of the insured may carry out his 'intention' and also cause unintended harm. When set next to the words 'at the direction of the insured' the word 'intentionally' might mean to the layman collusive, wilful or planned action beyond the classical notion of intentional tort. This built-in ambiguity has caused debate and refined definition in many courts; in any event, the word surely cannot be 'plain and clear' to the layman." (p. 273.)

In line with what the court points out in *Gray*, the distinction between an intentional injury and an unintended injury resulting from an intentional act has been recognized by various authorities. (See *Walters v. American Ins. Co.*, 185 C. A. 2d 776, 8 Cal. Rptr. 665; *Smith v. Moran*, 61 Ill. App. 2d 157, 209 N. E. 2d 18; *Baldinger v.*

*Consolidated Mut. Ins. Co.,* 11 N. Y. 2d 1026, 183 N. E. 2d 908; *Putman v. Zeluff,* 372 Mich. 553, 127 N. W. 2d 374.)

We conclude that the instant policy does not meet the tests of clarity and precision laid down by many of our precedents. Ambiguity exists with respect to the duty owed by the insurer to defend personal injury actions instituted against its insured. The policy, being ambiguous in this respect, is to be construed most favorably to the insured and against the insurer. Such being the required construction, we hold that Great Plains was obligated under the insuring agreement found in Coverage G of the policy to defend Cawby's lawsuit against its insured, despite the exclusionary clause in question.

The judgment of the lower court is reversed with directions to set aside the summary judgment entered in the defendant's favor and to proceed in accordance with the views expressed in this opinion. In this connection we observe that, by stipulation of the parties, the question of whether notice was given the insurer as provided by the policy was not before the court when it acted on defendant's motion for summary judgment. Hence, that question remains before the trial court for determination.

FONTRON, J., dissenting: Unhappily, I find myself in disagreement with the court's opinion, the preparation of which has fallen to me. It is not that I disagree with the principle that where ambiguity inheres in a contract of insurance the policy is to be construed strictly against the insurer, who wrote it, and favorably toward the insured, who paid for it. The rule is fair and serves a legitimate purpose. However, I part company from my esteemed colleagues when they construe this policy to be ambiguous, for my earnest search for ambiguity has been fruitless.

Under Coverage G of the insuring agreements the company is obligated (1) to pay all damages for which the insured may become legally liable because of injury to person or property and (2) to defend any suit against the insured for injury to person or property which seeks damages payable under the policy even though the allegations of the suit be groundless, false or fraudulent. However, under the exclusionary clauses, which are also a part of the policy, the insurance afforded under Coverage G does not apply to bodily injury or property damage caused intentionally by or at the direction of the insured.

Construing these provisions together, I believe it clear that the insurer's duty to defend extends only to claims covered by the policy, and does not extend to claims based on intentional torts, since they are expressly excluded from policy coverage. (44 Am. Jur. 2d, Insurance § 1535, pp. 414, 415.) An insurer is not bound to defend an insured in actions brought outside the obligations assumed in its policy. (*El Dorado Refining Co. v. United States Fidelity & G. Co.*, 157 Kan. 198, 139 P. 2d 369.)

I also believe the average policyholder having a contract of insurance containing provisions like those now before the court could not fail to understand, if he would only read his contract, that the company was not undertaking to pay damages resulting from intentional torts or to defend legal actions based on willful and intentional acts. Too often, I fear, courts are prone to label as ambiguous, contracts which could be understood if completely and carefully read.

Indeed, why should an insured expect his policy to indemnify him against damages flowing from his own intentional tortious act? In *Walters v. American Ins. Co.*, 185 C. A. 2d 776, 8 Cal. Rptr. 665, the court stated the general rule to be that a policy indemnifying an insured against liability for his own willful wrongs is void as against public policy. The rationale of the rule is appraised in *Malanga v. Manufacturers Cas. Ins. Co.*, 28 N. J. 220, 225, 146 A. 2d 105, this way:

". . . The reason the insurance policy denies coverage of an assault and battery committed by or at the direction of an insured is that it would be contrary to public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing. 7 Appleman, Insurance Law and Practice, § 242b (1942). . . ."

Courts should not lose sight of this principle in construing insurance contracts.

In this jurisdiction the rule has always been that an insurance contract, if not ambiguous, is to be enforced according to its terms and courts are not empowered to make another contract for the parties, their function being to enforce contracts as made. (*Knouse v. Equitable Life Ins. Co.*, 163 Kan. 213, 181 P. 2d 310; *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571; *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 464 P. 2d 253.) We have also declared that the language of an insurance policy is to be taken in its ordinary and popular sense, and a court should not search for ambiguities where the words used have a common and well under-

stood meaning. (*Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.*, 189 Kan. 528, 370 P. 2d 396.)

This court has also adhered to the general rule (44 Am. Jur. 2d, Insurance, § 1539, pp. 419, 420) that the duty of an insurer under a liability policy to defend an action for damages against its insured is measured, not by proof adduced at the trial or the outcome of the trial itself, but by the allegations of the petition as compared with the provisions of the insurance contract. (*El Dorado Refining Co. v. United States Fidelity & G. Co.*, supra; *Leonard v. Maryland Casualty Co.*, 158 Kan. 263, 146 P. 2d 378.)

The legal principle was recently reaffirmed in *Brown v. Green*, 204 Kan. 802, 466 P. 2d 299, where it was said:

". . . [T]he rule is that the question whether a liability insurance carrier owes a duty to defend is to be determined by the allegations of a plaintiff's petition and the terms of the policy. . . ." (p. 807.)

The plaintiff suggests the rule should be modified to accord with the views expressed by the United States Court of Appeals, Tenth Circuit, in *Milliken v. Fidelity and Casualty Company of New York*, 338 F. 2d 35 (1964), an action which arose from Kansas. While recognizing our rule to be as defined in the foregoing cases, the federal court declined to follow it implicitly because of differences that existed between federal and Kansas rules of procedure. The court explained its qualification of the rule in this wise:

". . . But, the allegations of the complaint are not conclusive on the issue. The duty to defend may attach at some later stage of the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage. The reason for this rule is that '. . . [u]nder the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties. . . .' Thus, the insurer's duty to defend an action brought in federal court against its insured may arise or attach at any stage in the litigation. And the duty does attach where there are facts, extraneous to the allegations of the pleadings, which, if proved, make out a case against the insurer that is covered by the policy and which either are actually brought to the insurer's attention or could have been discovered by it through a reasonable investigation." (p. 40.)

Perhaps, as urged by plaintiff, the rule which this court has previously followed should be qualified in line with the *Milliken* case, although this is neither the time nor the place to discuss that proposal. Even under the *Milliken* rule however, my view of what should be done with this appeal would not be affected.

Cawby's petition alleged an unprovoked assault and battery

against Gowing. It was charged to have been willful, malicious, vicious and violent, persisting after Cawby left his land to get medical attention. No amended petition was filed expanding the issue. Neither was the issue enlarged at pretrial conference. So far as the record is concerned the case went to trial on the single issue of a willful, malicious, vicious and unprovoked assault and battery as to which Cawby sought punitive as well as compensatory damages.

Hence, neither under our own rule, as last expressed in *Brown v. Green*, supra, nor under the *Milliken* rule, would Great Plains be obligated to defend against Cawby's lawsuit. Neither would Great Plains have any reason to expect the basis of recovery to be enlarged, for Gowing had already been convicted in a criminal case.

The court's opinion points out, citing *Gray v. Zurich Insurance Co.*, 65 C. 2d 263, 54 Cal. Rptr. 104, 419 P. 2d 168, that the exclusionary clause might be said to lack clarity in that an unintentional harm may flow from an intentional act. This may be true, but the suggestion is irrelevant so far as this case is concerned, for Gowing's acts were directed solely against the party injured, and were alleged to have been willful, malicious, violent and vicious throughout.

For the reasons stated I would affirm the judgment of the trial court.

PRICE, C. J., and KAUL, J., join in the foregoing dissenting opinion.